YERGER v. BARZ ET AL.

1. **Mortgage**: PRIORITY OF LIENS: RECORDING LAW. Section 1944 of the Code, providing that the indexing of a deed or mortgage by the re-corder, after it is filed for record, shall constitute constructive notice of the rights of the grantee therein, contemplates the remaining of the in-strument in the recorder's office until recorded, which is required to be as soon as practicable thereafter. Where a mortgage was withdrawn from the recorder's office after being indexed, and was not recorded for two years, it was held that third parties acquiring rights in the property in the meantime, in good faith, and without knowledge of the existence of the mortgage, were not charged with notice thereof by the records.

2. **Principal and Agent**: NOTICE TO AGENT: WHEN BINDING ON PRINCIPAL. The rule that notice to an agent is notice to his principal applies only to knowledge acquired by the agent in the particular trans-action, or which, if previously acquired, is still present in his mind at the time of his agency.

3. **Mortgage**: PRIORITY OF LIENS: ASSIGNMENT. As to priority between the holders of different mortgages, an assignee occupies no better posi-tion than his assignor.

*Appeal from Keokuk District Court.*

SATURDAY, APRIL 23.

THIS action is instituted for a judgment upon notes, and the foreclosure of a mortgage against the defendants, Herman and Maria Barz, and for a decree declaring the lien of plain-

tiffs to be superior to that of the other defendants. The de-
fendants Covill and The Iowa Loan and Trust Co., by way
of cross-bill, ask the foreclosure of mortgages against their
co-defendants, and pray that the lien in favor of each respect-
ively be declared superior to the lien claimed by plaintiff.
The court granted the plaintiff the relief asked. The defend-
ants Covill and The Iowa Loan and Trust Co. appeal. The
facts are stated in the opinion.

*Brown & Dudley* and *Sampson & Brown*, for appel-
lants.

*C. H. Mackey* and *Woodin & McJunkin*, for appellees.

DAY, J.—I. On January 18, 1877, Herman Barz and
wife executed a mortgage on the lands in controversy to F.

1. MORTGAGE: H. Gaylord to secure him or his order in the pay-
priority of
liens : record- ment of $1,000, evidenced by five promissory
ing law.    notes, dated December 25, 1876, and due, respect-
ively, in one, two, three, four, and five years from date. The
mortgage was acknowledged, and, on January 27, 1877, was
filed for record in the office of the recorder of Keokuk coun-
ty, and all the statutory entries were made in the index books,
except the page of the book where the record of the mort-
gage was made. The recorder also made the required indorse-
ments upon the mortgage, stating that it was recorded in
book 10, on page 294, of mortgage land records. The mort-
gage was subsequently withdrawn from the recorder's office
by the mortgagee, and on March 18, 1878, the first three
notes of the series, together with the mortgage, were trans-
ferred, for value, to plaintiff by Gaylord. On August 18,
1878, defendant Covill loaned Barz $800, and to secure the
payment of the loan Barz and wife made their mortgage to
Covill on the land in controversy. This mortgage was ac-
knowledged and filed for record in the office of the recorder
of Keokuk county, August 30, 1878, and recorded in book
12, page 597, of the mortgage records of said county.

On the same day, Barz and wife, for the purpose of securing The Iowa Loan and Trust Company in the payment of ten notes of $8.00 each, one due each six months after August 1, 1878, made a mortgage on the same land, which was also recorded in the same book, on page 600, as the Covill mortgage. By its terms this mortgage was junior to the Covill mortgage. Both mortgages were duly indorsed as required.

On the 8th or 9th of January, 1879, it was discovered that the mortgage to Gaylord, then in the possession of the plaintiff, had not, in fact, been recorded. On the morning of January 9, 1879, the mortgage was procured from the plaintiff by Jones, recorder of Keokuk county for 1877 and 1878, but whose term of office expired January 1, 1879, and recorded in mortgage records, book 10, page 264, and the page on the indorsement on the back of the mortgage was changed accordingly, and the index was completed by entering in the proper column the page of the book where the mortgage was recorded. The loan by Covill to Barz was negotiated through The Iowa Loan and Trust Company upon an abstract of title prepared by Johnston & Hawkins, and forwarded to the Iowa Loan and Trust Company by James & Son. This abstract of title contained no reference to the indexing of the mortgage to Gaylord.

The first and principal question presented by the record is the following: Were Covill and The Iowa Loan and Trust Company, at the time of accepting their respective mortgages, affected with constructive notice of the mortgage to Gaylord? The provisions of the statute upon the subject are found in the following sections of the Code of 1873.

"Section 1941. No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless recorded in the office of the recorder of the county in which the land lies, as hereinafter provided.

"Section 1943. The recorder must keep an entry book or index, the pages of which are so divided as to show in paral-

lel columns: 1, the grantors; 2, the grantees; 3, the time when the instrument was filed; 4, the date of the instrument; 5, the nature of the instrument; 6, the book and page where the record thereof may be found; 7, the description of the land conveyed.

" Section 1944. The recorder must indorse upon every instrument properly filed in his office for record the time when it was so filed, and shall forthwith make the entries provided for in the next preceding section, except that of the book and page where the record may be found, and from that time such entries shall furnish constructive notice to all persons of the rights of the grantee conferred by such instrument.

" Section 1946. Every such instrument shall be recorded as soon as practicable in a suitable book, to be kept by the recorder for that purpose; after which he shall complete the entries aforesaid, so as to show the book and page where the record is to be found."

It is to be observed that under section 1941 no instrument possesses validity as to subsequent purchasers unless recorded in the manner provided in the following sections.

These sections provide for the making of an index, the indorsement upon the back of the instrument of the time when filed, and the recording of the instrument itself as soon as practicable. These requirements are all made essential by the statute, and it is not competent for the court, by construction, to dispense with one or more of them. It is true section 1944 provides that the entries upon the index book and upon the instrument filed shall furnish constructive notice to all persons of the rights of the grantees. But this provision clearly comtemplates that the instrument itself shall be recorded as soon as practicable. Otherwise it would be in direct conflict with section 1941, which declares that the instrument shall possess no validity as to *bona fide* purchasers unless recorded as subsequently provided. Ths statute clearly contemplates that an instrument once filed shall remain

with the recorder until actually recorded, and that, intermediate the date of filing and the date of the actual record, the entries upon the index shall furnish constructive notice. As the mortgage was withdrawn from the files of the recorder, and had not been recorded at the time the mortgages to the defendants, Covill and The Iowa Loan and Trust Company, were executed, we are of opinion that these defendants cannot be affected with constructive notice of the mortgage under which the plaintiff claims. The case of *Barney v. Mc-Carty*, 15 Iowa, 510, although arising under the Revised Statutes of 1843, is, in its reasoning, entirely applicable to this case.

II. The application for the loan was made to James & Son, who procured an abstract of title and forwarded it, with

2. PRINCIPAL and agent: notice to agent: when binding on principal.

the application, to The Iowa Loan and Trust Company. When the company procured the money from Covill, they sent it, together with a coupon note and mortgage ready for execution by Barz and wife, to James & Son. James & Son paid over the money to Barz, secured the proper execution of the notes and mortgage, procured the mortgage to be recorded, and returned it, with the notes, to The Iowa Loan and Trust Company. It is claimed that James & Son were the agents of Covill, that they had knowledge of the Gaylord mortgage held by plaintiff, and that the knowledge of the agent affects the principal. If James & Son were informed at all of the Gaylord mortgage, it was through a conversation which the plaintiff had with James on the 18th day of March, 1878, more than four months before the mortgages to the defendants were executed. James did not acquire the information when engaged in the transaction of any business for Covill, but long before his agency for Covill had any existence, if he is to be regarded, under the evidence, as the agent of Covill. It does not appear that James retained this information in mind at the time the mortgages to the defendants were executed. Upon the contrary, James testifies that he has no

recollection of any conversation with the plaintiff about the Gaylord mortgage. We are clearly of the opinion that Covill, under the circumstances disclosed, cannot be affected by any information imparted to James. See Story on Agency, § § 140 and 140a; *The Distilled Spirits*, 11 Wallace, 356; *Day v. Wamsly*, 33 Ind., 145.

III. The Iowa Loan and Trust Company, it is conceded, acted as the agent of Covill in effecting the loan. It is claimed that C. E. Fuller, the treasurer of this company at the time the loan was made, had knowledge of the mortgage under which plaintiff claims, and that this knowledge affects Covill. Fuller, amongst other things, testifies as follows: "In the Summer of 1878 the company received an application from Herman Barz for a loan of $800, offering as security certain real estate. The money to fill the application was received from Stephen H. Covill, of Vermont. The application was sent to said company by S. A. James & Son, of Sigourney, Iowa, as the agents of said Barz. The application was signed by Barz, but sent by S. A. James & Son, and was accompanied by an abstract of title of the premises described in the application. The Iowa Loan and Trust Company had no other knowledge of the title except such as was revealed in the abstract. At the time of negotiating said loan for Barz, neither the Iowa Loan and Trust Company, nor myself, had any knowledge that plaintiff, Yerger, had or claimed to have a mortgage on said premises outstanding prior to the loan from Covill. We had nothing, either personally or officially, to do with the making of the abstract. S. A. James & Son furnished us all the information we had as to the property, except such as was furnished by Mr. Barz and by the abstract. The Company guaranteed the collection of the loan to Covill, and it would not have been recommended by us to Mr. Covill, or guaranteed, had we had any information whatever that Yerger had, or claimed to have, any interest in the property. Said Barz owes said company, on a second mortgage, for eighty dollars, in installments of ten

dollars each, secured by a mortgage junior to that given to Covill. We had no knowledge of there being any other claim prior to that of Covill; supposed that Covill's mortgage was the first lien upon the premises and ours the second one. I do not think of anything material, other than that in the application Barz made affidavit that the property was unincumbered, except the mortgage to Gaylord, which was paid off with the money obtained from Covill: This was not the mortgage claimed to be owned by Yerger." It is this last part of Fuller's testimony upon which the plaintiff relies to affect Fuller with notice of the Gaylord mortgage. The evidence shows that Barz executed two mortgages to Gaylord. The first was satisfied January 27, 1877, when the second was issued. The plaintiff claims that Barz must have referred, in his application, to the mortgage assigned to plaintiff, as the other had been satisfied before that time, and Fuller is mistaken in saying that the mortgage referred to was not the one claimed to be owned by Yerger. The probability is that the witness intended to refer to the mortgage to the German Savings Bank, a release of which, dated August 20, 1878, was filed for record August 30, 1878, the same day that the defendants' mortgages were acknowledged and filed for record. But whatever Barz referred to, or was understood to refer to, it is clear from the evidence that he was not understood by Fuller to refer to the mortgage now claimed by plaintiff. To so hold would be directly in the face of his positive testimony; and would be inconsistent, not only with all the preceding portion of his testimony, but with the act of the company in guaranteeing the loan and accepting security to themselves upon the property in question.

IV. It is claimed that the burden of proof is upon the defendants, The Iowa Loan and Trust Company and Covill, to establish that they are purchasers, for a valuable consideration, without notice, and that they have not sufficiently established that fact. Without determining on which party rests the burden of proof, we think the defendants have es-

tablished their want of notice.    We have already set out the testimony of Fuller.    Covill testifies as follows:

"I had no knowledge when the loan was made that J. P. Yerger had any, or claimed to have a mortgage on the said premises prior to the mortgage taken by me."    It is said that, as the mortgage was originally executed to Gaylord, Covill may not have known that Yerger claimed to have any mortgage upon the property, and yet may have known of the mortgage to Gaylord, assigned to Yerger.    But this position is clearly negatived by the testimony of this witness as follows:    "The premises were represented to me by the Iowa Loan and Trust Company to be free and clear of incumbrances of any kind, and I supposed that I was getting the first lien upon the premises, and, relying upon said representations, advanced my money in good faith."

V.    It is claimed that as the plaintiff is the assignee of the mortgage for value, he stands in a better position than his assignor, and must be protected, whatever might be the rule if Gaylord were the party seeking the foreclosure of the mortgage.    In support of the position the plaintiff cites *Preston, Kean & Co. v. Morris, Case & Co.*, 42 Iowa, 549; *Farmers' National Bank v. Fletcher*, 44 Id., 252; *Vandercook v. Baker*, 48 Id., 199.    The principle invoked is not applicable to the present case.    The question involved here is one of priority under the registry statutes.    As to priority between the mortgagee and parties holding under other mortgages, the assignee can occupy no better position than the assignor.    The court below erred in allowing the plaintiff the priority of lien.

3. MORTGAGE: priority of liens: assignment.

REVERSED.