Keyes vs. Scanlan.

KEYES, Respondent, vs. SCANLAN, Appellant.

*April 30 — June 1, 1885.*

*(1) Divorce: Execution for alimony: Lien on land. (2) Homestead rights of wife driven away by cruelty. (3) Sale of homestead by husband: Estoppel to claim exemption.*

1. A complaint alleging that upon a judgment of divorce awarding execution for alimony and costs in favor of the plaintiff and against her husband an execution was duly issued, and that under such execution land of which the husband was the equitable owner and in possession when the judgment was docketed was sold to the plaintiff who now holds the sheriff's certificate, is *held* to show that the plaintiff has a lien upon the land such as entitles her to maintain an action under sec. 3186, R. S., to test the validity of any other lien thereon.
2. A wife who is driven from her home by the cruelty of her husband does not thereby lose any of her homestead rights.
3. Where a husband has sold the homestead without the wife's consent, both he and the vendee are estopped to claim that it was exempt as such homestead as against the wife who subsequently purchased it under an execution issued upon a judgment for alimony in her favor.

APPEAL from the Circuit Court for *Grant* County.

Action to have a lien upon land under and by virtue of the purchase thereof at an execution sale, established against the claims of the defendant to said land. The substance of the complaint and the facts, as found by the trial court, are stated in the opinion. The action for a divorce, therein referred to, by the plaintiff against her husband, was com-

menced in June, 1880, and the judgment therein was rendered September 19, 1881. The purchase of the land in question by the defendant from the plaintiff's husband was made March 29, 1880. From the judgment entered in accordance with the findings, the defendant appealed.

For the appellant there was a brief by *Wilson & Provis*, and oral argument by *Mr. Provis.*

For the respondent there was a brief by *Brooks & Dutcher* and *Bushnell & Watkins*, and oral argument by *Mr. Bushnell.*

COLE, C. J. The last clause of sec. 3186, R. S., provides that any one not having the possession or legal title to land, but being the owner and holder of any lien or incumbrance thereon, has the same right as the owner in fee in possession to institute an action to test the legality and validity of any other claim, lien, or incumbrance on such land, or any part thereof. This action is brought under that clause. It is objected that the complaint states no cause of action, because it does not appear from the facts that the plaintiff had any lien upon the lands described within the meaning of this provision. The complaint sets out that the plaintiff recovered a judgment for divorce against her husband, Sylvester Keyes, in September, 1881, and that the sum of $300 alimony, and costs of suit, were adjudged in her favor; that at the time of the docketing of that judgment Sylvester Keyes was the equitable owner and in possession of the two forty-acre tracts mentioned; that she caused an execution to be issued on the judgment for alimony, and this real estate was sold thereon; that at the sheriff's sale she purchased the property, and now holds the sheriff's certificate. This surely shows that the plaintiff acquired a lien upon the real estate unless the levy and sale upon the execution were null and void. We are not sure but the real position of the learned counsel for the defendant is that

they were wholly unauthorized and void. But that position is manifestly untenable.

Sec. 2367 of the divorce act clearly authorizes the court, on adjudging alimony to the wife, to provide that the same may be paid as shall be deemed expedient, or to impose it as a charge upon specific real estate of the party liable, or to require sufficient security to be given for the payment thereof, according to the judgment; and upon the failure to pay such alimony, the "court may enforce the payment thereof by execution or otherwise as in other cases." In the divorce judgment execution was awarded. In view of that fact, there is certainly no ground for claiming that a sale under the execution would not, *prima facie*, create a lien upon the real estate sold. On the contrary, there are very satisfactory reasons for saying that the divorce judgment stood upon the same footing as ordinary money judgments, and became a lien upon the real estate of the debtor liable to execution, as soon as docketed. It will be noticed that there is a change in the language of sec. 2367, which was obviously made so as to allow, beyond all doubt, a judgment for alimony to be enforced like other money judgments. See Revisers' notes to the section. In *Barker v. Dayton*, 28 Wis. 368, where a judgment obtained in 1867 directed an execution to issue to collect the amount allowed for alimony, that remedy was impliedly sanctioned as correct. But here the plaintiff does not rest her case alone upon the lien which the docketing of the judgment would give her, but she has issued an execution and actually made sale under it of the lands named. Such being the case, it seems to us impossible to maintain the position of counsel that the facts stated do not show that she has acquired such a lien that she is entitled to bring this action. It may be that this lien was liable to be discharged by redemption from the certificate, but that fact does not affect her right to this

Keyes vs. Scanlan.

remedy. Most, if not all, liens are subject to redemption by the owner of the property.

The other questions discussed relate to the relief granted. It becomes necessary to refer to some of the facts found by the court on this branch of the case. It appears that the plaintiff and Sylvester Keyes intermarried in 1878, and lived together as husband and wife until February, 1880, when they separated. At the time of the marriage Keyes was the owner of the land in question. In February, 1879, Keyes borrowed of one Friar $175, and, to secure the repayment thereof, he and his wife executed a deed to Friar, and, at the same time, Friar gave back to Sylvester a land contract to reconvey the land in two years on the payment of the money loaned, with interest. Of course, this transaction amounted to nothing more than a mortgage. The money was borrowed for and part of it used to build a house on the south forty, in which the parties lived until they separated. The court finds that neither of the parties ever lived in the house after the 1st of March, 1880, and that it was no longer actually occupied as a homestead by either of them. On the 24th of February, 1880, Sylvester borrowed from Friar the further sum of $60, the payment of which it was agreed between them should be secured by the deed and land contract, and by consent this contract was changed so as to read on payment of $235, instead of $175. In March, 1880, the defendant in this action, who is a sister of Sylvester and lives on an adjoining eighty, purchased of Sylvester his eighty, agreeing to pay, and actually paying, as the court finds, $600, which was the full value of the land. Thereupon, at the request of Sylvester and the defendant, but without the knowledge or consent of the plaintiff, Friar deeded the land to the defendant, and Sylvester assigned to her the land contract.

The court finds that the defendant purchased the prop-

erty in good faith, but with notice that the conveyance to Friar was a mortgage merely. The court further finds that the plaintiff had good reason for leaving her home on the south forty and returning to her father as she did, and that she never abandoned any of her rights in the homestead. The court held, as a conclusion of law, that the sale and conveyance of the eighty acres of land to the defendant was valid as to the north forty, but that the same was null and void as to the homestead, or south forty, except as an assignment of the mortgage as to that forty; also that the plaintiff was entitled to a judgment establishing her lien on the south forty, under her certificate of sale, against any claim of the defendant thereon, saving and except that the lien of the defendant on the whole eighty, acquired by virtue of the assignment to her of the mortgage by Friar, so far as it affected the south forty, was a prior lien to the lien of the plaintiff thereon.

The plaintiff neither excepts to the findings of fact, nor complains of the relief granted. Has the defendant, then, any just ground of complaint of the judgment? We think not. The judgment plainly goes upon the assumption that, except as to the mortgage interest which she acquired from Friar, the plaintiff has a lien on the homestead forty which is superior in right, and prior in equity, to her interest acquired under the Friar deed and purchased from Sylvester. In other words, that, so far as the plaintiff is concerned, the only effect of that purchase, and of the quitclaim deed from Friar, was to clothe her with Friar's rights as mortgagee. But it is said that the court finds that the defendant purchased the eighty acres of Sylvester, paying therefor all the land was worth; but the defendant must be presumed to have known and understood that Sylvester had no right to sell the homestead without the consent of his wife. Her consent and signature to the alienation were essential to give the sale any validity. The statute so expressly de-

clares. Sec. 2203, R. S. This transaction took place about
a month after the plaintiff was compelled, in consequence
of her husband's neglect to provide for her, to go to her
father's house for support. Being thus forced from home
by Sylvester's cruelty and neglect, she lost none of her
rights, forfeited no security or privilege to which she would
otherwise be entitled had she continued to live on the
homestead. *Barker v. Dayton*, 28 Wis. 368.

It is said the court finds as a fact that the defendant pur-
chased the premises of Sylvester in good faith, after they
ceased to be occupied as a homestead. This is true. But
the court further finds that the plaintiff had good reason for
leaving her home on the land and returning to her father
as she did, and that she never abandoned any of her rights
by so doing. Chief Justice Dixon says, in the *Barker Case*,
that "it is well settled that the wife, if driven from her
home by the cruelty of her husband, loses no rights and
forfeits none of the immunities or privileges to which she is
entitled by law, but that she retains the same, without prej-
dice, as if she had remained in the house, or continued to re-
side with her husband." Page 383. This defines the legal
rights of the plaintiff upon the facts. Sylvester could not,
therefore, under the circumstances, make a valid sale of the
homestead to the defendant, and the latter is chargeable
with notice that such was the law.

But it is further said, if the south forty was a homestead it
was not liable to sale on execution. This objection is con-
clusively disposed of by the reasoning in the *Barker Case*.
Sylvester's sale of the homestead to the defendant, though
insufficient for any purpose as against the plaintiff, estops
him, or the defendant claiming from him, from setting up
the homestead right and privilege of exemption. He had
abandoned the homestead and attempted to sell it to the de-
fendant. By so doing he forfeited the exemption. The
privilege cannot be asserted by him for the benefit of his

vendee, and to protect her title.   Especially is this true in respect to the plaintiff, who, unlike a general creditor, has the additional equity in her favor that the sale was made in violation of the statute requiring her consent and signature to the alienation, and was really in fraud of her rights. But this whole question is so clearly and thoroughly discussed in the *Barker Case* that it is not necessary to dwell upon it.

The judgment of the circuit court is as favorable to the defendant as the facts and law of the case would warrant, and it must therefore be affirmed.

*By the Court.*— Judgment affirmed.