LUNT ET AL. v. NEELEY ET AL.

| 67 | 97 |
| 79 | 282 |
| 67 | 97 |
| 81 | 686 |
| 67 | 97 |
| 85 | 543 |
| 67 | 97 |
| 87 | 175 |
| 67 | 97 |
| 123 | 551 |
| 67 | 97 |
| 128 | 406 |
| 67 | 97 |
| 132 | 369 |

1. **Homestead:** OWNED BY WIFE UNDER BOND FOR DEED: ASSIGNMENT OF BOND WITHOUT HUSBAND'S CONCURRENCE: SUBSEQUENT ABANDONMENT: INNOCENT PURCHASER FROM ASSIGNEE. Plaintiffs occupied a homestead which was owned by the wife under a bond for a deed. The wife assigned the bond without the concurrence of the husband. *Held* that the assignment was of no validity; (Code, § 1990; *Stinson v. Richardson*, 44 Iowa, 373;) and that it was not validated by the subsequent abandonment of the homestead. (*Bruner v. Bateman*, 66 Iowa, 488.) But where, after such abandonment, another, who had no notice of the facts rendering the assignment invalid; and no knowledge that plaintiffs claimed any interest in the property, purchased it from one in possession, who appeared to have a perfect record title, *held* that his title was superior in equity to the homestead rights of the plaintiffs.

2. **Principal and Agent:** NOTICE TO AGENT: HOW FAR BINDING ON PRINCIPAL. A principal is not bound by his agent's knowledge of facts learned a year prior to the agency, in a transaction which the agent

was conducting on his own account, unless it is shown that such knowledge was present in the agent's mind at the time of the transaction for his principal. *Yerger v. Barz*, 56 Iowa, 76, followed.

### Appeal from Polk District Court.

### WEDNESDAY, OCTOBER 7.

ACTION to quiet in plaintiffs the title to certain real estate. The district court dismissed the petition. Plaintiffs appeal.

*Cardell & Shortley* and *Sickmon, Parrott & Long*, for appellants.

*Nourse & Kauffman*, for appellees.

REED, J.—The following facts are admitted by the pleadings, or established by the evidence.

Plaintiff E. D. Lunt is the surviving husband of Augusta E. Lunt, who died October 11, 1882. The other plaintiffs are her children. Prior to the thirteenth of March, 1878, the property in controversy was owned by the defendant James Neeley, and on that day he entered into a contract with said Augusta E. Lunt for the sale of said property to her. The price agreed upon was $400, and she agreed to pay the same in monthly installments of $10 each. He gave her a title-bond, in which he bound himself to convey the property to her upon the payment by her of the purchase price as provided in the contract. She took possession of the property immediately, and occupied it with her family as a homestead. Her husband, E. D. Lunt, was engaged in publishing a newspaper in Perry, the town in which the property is situated. In the fall of 1879 he sold out his business there, and went to Colorado, leaving his family in Perry, however, in the occupancy of said property. His object in going to Colorado was to find a location in which to establish himself in business, and he intended to remove his family there if, upon examination, he found it to be a desirable country

in which to live. He first went to Leadville, and established a job-printing office there. He sold this business out in February, 1880, and went to Buena Vista, where he established a newspaper. He left there in a short time and went to Marysville, where he started another paper; and he was subsequently appointed postmaster at that place.

On the thirty-first day of January, 1880, the said Augusta E. Lunt made a contract with defendant D. W. Payne for the sale of said property to him. She had then paid to Neeley $220 of the purchase price. Payne paid her that amount for her interest in the property, and she assigned the bond to him. Her husband did not sign or concur in this assignment. She continued to occupy the property as a place of residence until the first of March following, when she yielded possession to Payne, and removed to Colorado, and joined her husband at Marysville, where they lived and kept house for five or six months, when they removed to Denver. In December, 1880, E. D. Lunt returned to Perry, and re-established himself there in business. In January following he was joined by his wife and children, and they moved into a house near the property in controversy, and continued to occupy the same as a place of residence until the death of Mrs. Lunt. On the twenty-fifth of May, 1880, or prior to that, D. W. Payne paid Neeley $180, that being the amount of the unpaid installments of the purchase price at the time the contract was assigned to him. And on that day Neeley conveyed the property to Maria Payne, who is the wife of D. W. Payne. On the twentieth of June, 1881, Mrs. Payne sold and conveyed it (her husband joining in the conveyance) to Mrs. Minerva Warren for the consideration of $600. In making the purchase, however, Mrs. Warren acted as agent for C. R. Warren, who furnished the money to pay for the property, and she subsequently conveyed it to him. At the time of the purchase from Mrs. Payne, C. R. Warren had no actual notice that the Lunts had or made any claim to the property; but, during the time it was occupied by them

as a homestead, Mrs. Warren had some negotiations with Mrs. Lunt concerning it; Mrs. Warren desiring at that time to purchase it for herself. She knew at that time that the Lunts occupied it as a homestead, and that their right was acquired under the bond from Neeley. She was informed also of the conditions of the bond. During the period between the assignment of the bond to Payne and the conveyance of the property to Mrs. Payne, it was occupied by a tenant, who paid rent to Payne; and after the conveyance to her, and up to the time of the sale to Warren, Mrs. Payne received the rents.

I.   Plaintiffs' position is that the sale and assignment of the bond by Mrs. Lunt to Payne are void, for the reason that the property was the homestead, and the husband did not concur in or sign the writing by which the bond was assigned to Payne; and they contend that, if this position is correct, the subsequent grantees acquired no interest in the property. If the controversy was between plaintiffs and D. W. Payne alone, and there were no intervening rights of third parties to affect the case, the correctness of plaintiffs' first position could hardly be questioned. Neither the husband nor wife can, by any separate act, affect the homestead rights of the other, or change the homestead character of the property. When the right of homestead has once attached to the property, it can be relinquished or divested only by a joint conveyance, or by the abandonment of the property as a homestead by both the husband and wife. Code, § 1990; *Barnett v. Mendenhall*, 42 Iowa, 296; *Stinson v. Richardson*, 44 Id., 373. The removal of E. D. Lunt to Colorado, even if intended by him as an abandonment of the property, did not affect the character of the property, nor the rights of the parties. The wife had the right to continue to occupy it, and so long as she exercised that right, the homestead rights of both were preserved. She was in the occupancy of it when the assign-

1. HOME-STEAD: owned by wife under bond for deed: assignment of bond without husband's concurrence: subsequent abandonment: innocent purchaser from assignee.

ment to Payne was made. It therefore retained the home-
stead character at that time, and her act in assigning the
contract was as ineffective to change that character as the
former act of abandonment by the husband had been. Her
subsequent removal to Colorado, and the conduct of herself
and husband while there, and after their return to Perry,
indicate an intention by both to abandon the homestead.
But such abandonment was subsequent to the assignment,
and, as that act was invalid at the time of its execution, it
was not validated by the subsequent abandonment of the
property. *Bruner v. Bateman*, 66 Iowa, 488.

II. It does not follow, however, that the subsequent pur-
chasers of the property acquired no interest in it which they
can assert against the plaintiffs. If C. R. War-
ren is in the position of an innocent purchaser,
THE SAME.
he is entitled to be protected against the claim urged by
them, notwithstanding the invalidity of the sale and assign-
ment by Mrs. Lunt. The bond and assignment to Payne
were of record at the time he made the purchase from
Mrs. Payne. The record of these instruments imparted no
notice of a homestead right in favor of the Lunts in the
property; and there was nothing in any of the conveyances
constituting the chain of title which indicated the existence
of such right; and they were not in possession, or in any
manner asserting the right. He purchased from one who
was in possession of the property, and who appeared by the
record to have a perfect title to it, and he had no actual
notice either of the claim now asserted by plaintiffs nor of
the fact on which it is based. He is clearly an innocent pur-
chaser of the property, and as such should be protected.

III. Plaintiffs contend, however, that C. R. Warren is
charged with notice of the facts which were known to his
agent who purchased the property for him. The
knowledge of these facts, however, was acquired
by Mrs. Warren more than a year before the
purchase, and while she was negotiating for the
2. PRINCIPAL
and agent:
notice to
agent: how
far binding on
principal.

purchase of the property for herself, and it is not shown that it was present in her mind at the time she made the purchase for C. R. Warren. Notice of the facts cannot be imputed to him under these circumstances. *Yerger v. Barz,* 56 Iowa, 77.

The judgment of the district court will be

AFFIRMED.

