S. R. RAYMOND, Appellant, v. F. C. WHITEHOUSE, A. C. WHITEHOUSE, KERN & SCOFIELD *et al*, Defendants, and GEORGE E. MAY, Intervenor, Appellee.

Mortgages: FORECLOSURE OF SECOND MORTGAGE: WHEN EXTIN-
GUISHMENT OF FIRST. Where suit is brought to foreclose a
1    second mortgage and thereafter, but before sale, plaintiff pur-
chases the first mortgage, the sale and purchase by him of the
land under such foreclosure for an amount sufficient to satisfy
the second mortgage, does not extinguish the lien of the first
mortgage.

Same: WHEN NOT SIMULTANEOUS: REDEMPTION. Where mortgages
2    are executed at the same time, but one recites that it is sub-
ject to the other, and at the time of commencement of suit to
foreclose the junior the plaintiff is not the owner of both, they
are not simultaneous, and in the matter of redemption are re-
garded separate instruments.

Judgment of Foreclosure: RIGHTS OF ASSIGNEE: ESTOPPEL. The
3    purchaser of a judgment on foreclosure of a mortgage acquires
more than the assignee of an ordinary judgment; he becomes
the assignee of the mortgage, and has such an interest in the
land as entitles him to the protection of the recording acts, so
that if at the time of his purchase a prior mortgage has been
released of record, he may rely on such release and the owner
of the prior mortgage is estopped from asserting his rights to
the prejudice of such assignee.

Right of Redemption: The holder of the legal title under a sher-
4    iff's sale on foreclosure, and also of a prior mortgage, is entitled
to redeem from a sale on foreclosure of a subsequent mortgage,
and a decree quieting title and barring such right is erroneous.

*Appeal from Plymouth District Court.*—HON. W. M.
HUTCHINSON, Judge.

SATURDAY, JANUARY 24, 1903.

SUIT in equity to cancel the release of a mortgage
executed by defendants Whitehouse to plaintiff; to re-es-
tablish said mortgage; to declare defendants Kern &

Scofield junior and inferior lienholders; to bar and fore-close their lien, or to require them to redeem from a sheriff's sale held on another mortgage held by plaintiff; and for general equitable relief.' Defendants answered the petition, and George E. May intervened, claiming that plaintiff had released his mortgage of record, and that, relying on this release, he purchased of Kern & Scofield in good faith a mortgage held by them; that plaintiff is estopped from now claiming that the release of record was of no effect; and that he should have a decree quieting title as against all parties to the litigation.    The cause was tried to the court, resulting in a decree for intervener, and plaintiff appeals.—*Modified* and *affirmed.*

*E. T. Bedell* for appellant.

*McDuffie & Keenan* and *Ellis & Ellis* for appellee May.

DEEMER, J.—There is little dispute over the facts. The conceded ones are as follows:    Defendants White-house owned the property in dispute on July 1, 1893, and on that day executed a mortgage thereon to plaintiff for the sum of $1,000, and another and second mortgage on the same property to the same person to secure notes aggregating $60.    Raymond sold the $1,000 note and mortgage, and on the 25th of November, 1895, brought suit to foreclose the second mortgage.    The Whitehouses had in the meantime, and on March 6, 1894, made a third mortgage on the same property to one Hamilton, to secure the sum of $600, and Hamilton had on the 12th day of April, 1895, assigned this mortgage to defendants Kern & Scofield; this assignment having been properly recorded on April 22, 1895, in the records of Plymouth county. Plaintiff made Hamilton a party to his foreclosure suit, but defendants Kern & Scofield were not made parties thereto, although, as will be observed, their assignment was of record when the foreclosure suit was commenced.    On

May 6, 1896, a decree of foreclosure was obtained by plaintiff in his suit, and the land was sold July 11, 1896, to plaintiff, who on July 14, 1897, obtained a sheriff's deed thereto. Plaintiff took up the $1,000 mortgage because of his having guaranteed the payment thereof, and received a reassignment thereof. On April 1, 1899, plaintiff sold the land thus acquired to one Phillips, and believing that he had good title, and that the rights of all lienholders had been cut off, he executed a release showing payment of the $1,000 mortgage, and caused the same to be properly recorded on April 28, 1899. Soon after his sale to Phillips, plaintiff discovered that Kern & Scofield had not been made parties to his foreclosure proceedings, and he thereupon took the land back from Phillips, and now holds title thereto, indirectly through the sale under foreclosure of his mortgage. On April 26, 1895, Kern & Scofield commenced action to foreclose the mortgage they had obtained from Hamilton, and in due course, and on October 21, 1897, obtained a judgment and decree of foreclosure against Whitehouse. On November 11, 1899, Kern & Scofield assigned all their right, title, and interest in and to the Hamilton note and mortgage, and to the judgment and decree rendered thereon, to intervener, May. On November 3, 1899, plaintiff commenced this action, and served notice thereof on Kern & Scofield. May afterwards intervened as stated, and claimed that he was protected, as an innocent purchaser of the Hamilton mortgage, and the proceedings thereunder, from plaintiff's $1,000 mortgage.

There are but two points of fact in dispute, and these are: First, the character of May's purchase; and second when did plaintiff take the assignment of the $1,000 mortgage? As to the first point we find that May's purchase of the Hamilton mortgage and of the judgment and decree thereunder, was for value, in good faith, and in the belief that the $1,000 mortgage had been released. This purchase was on the 11th day of November, 1899, and the petition

in this case was filed November 17, 1899. We are also of opinion that Kern, of the firm of Kern & Scofield, who conducted the negotiations with May, was intending to defraud plaintiff, but that intervener had no knowledge of this intent. As to the second point, we find that plaintiff was not the owner of the $1,000 mortgage when he commenced his suit to foreclose the $60 mortgage, but that he became the owner thereof on July 6, 1896, before the sale under his foreclosure decree. Under this state of facts, it is clear that, had Kern & Scofield remained the owners of the $600 mortgage, plaintiff would be entitled to the relief demanded in this action, unless it be for the fact that, at the time of the sheriff's sale under the $60 mortgage foreclosure, he was the owner of the $1,000 mortgage, or that the mortgages were so related as that there could be but one foreclosure; and this brings us to a consideration of the law propositions involved.

It is contended first that, as plaintiff was the owner of the $1,000 mortgage when he made his purchase at sheriff's sale, he should have bid enough to have covered

1. FORECLOS-URE of second mort-gage: when extinguish-ment of first.

this mortgage, and, as he failed to do so, he has lost his mortgage lien, or, if this be not true, that the mortgages were executed simultaneously, and that foreclosure of one exhausted the lien of the other. Had plaintiff been the owner of both the $1,000 and the $60 mortgages at the time he brought this action to foreclose, there is no doubt that the lien of the first would have been extinguished, under the doctrine of *Wells v. Ordway*, 108 Iowa, 86. But as we have seen, he did not own it at that time. True, he acquired it before the sale, but this fact did not impose upon him the duty of bidding enough to cover this indebtedness. Nason, the purchaser of the $1,000 mortgage from plaintiff, was not made a party to the foreclosure proceedings on the $60 mortgage, and plaintiff took a reassignment thereof before bidding on the land. He was then a lien

holder, and perhaps, as to all who were then parties to that litigation, it was his duty to bid all that he thought the land was worth, or suffer redemption by them from the sale, rather than from the liens. Had there been no release of the $1,000 mortgage, and intervenor, as assignee of a prior lienholder, not made a party to the foreclosure proceedings, was attempting to redeem, in equity he would have been required to redeem from the debt, rather than from the sale. *Spurgin v. Adamson*, 62 Iowa, 661, and cases cited; *Iowa County v. Beeson*, 55 Iowa, 262; *Johnson v. Harmon*, 19 Iowa, 56.

Intervenor contends, however, that the mortgages were simultaneous, and that foreclosure of one exhausted the remedy on the other. To this contention two answers suggest themselves: In the first place, this is an attempt to make equitable redemption, and not an effort to redeem under the statute; and, second, the mortgages, while executed at the same time, were not simultaneous, for the reason that the second—the $60 mortgage— is in express terms made junior to the first. As they were held by different parties at the time the foreclosure suit was instituted, they should be regarded, in so far as the matter of redemption is concerned, as entirely separate instruments. Plaintiff did not, after acquiring the $1,000 mortgage, make a statement as to the amount he was willing to credit on this claim; but this was not essential, for reasons which are perfectly plain.

2. SAME: when not simultaneous: redemption.

II. Intervener, May, contends, however, that plaintiff is estopped from denying the validity of the release executed by him of the $1,000 mortgage, and claims that he is an innocent purchaser of the Kern & Scofield mortgage, and the proceedings thereunto, and as such is entitled to protection. Plaintiff concedes that he is not entitled to a restoration of his mortgage as against a *bona fide* purchaser of the land

3. JUDGMENT of foreclosure; rights of assignee; estoppel.

without notice, but he insists that intervener is not a purchaser of the land, and that, at most, he is the mere assignee of a judgment, who stands in the shoes of his assignors, and has no greater rights than they would have had. Intervener says that he purchased the mortgage lien held by Kern & Scofield, relying on the release of the $1,000 mortgage, and that plaintiff is estopped from denying the efficacy of this release. It must be conceded that intervener is not a purchaser of the land, and also that he is something more than the assignee of a judgment. He purchased a mortgage which had gone to foreclosure and decree, and all rights thereunder. Does he for this reason stand in a better position than the assignee of an ordinary judgment, and was he, by reason of the facts recited, justified in relying on the recorded release?

The assignee of an ordinary judgment stands, as a rule, in no better position than his assignor. *Burtis v. Cook*, 16 Iowa, 194. But as said in *Crosby v. Tanner*, 40 Iowa, 136, in explaining the *Burtis Case*, this rule does not obtain as to equities residing in third persons. That case is, in principle, much like the one now before us. There a mortgagee, who had agreed that a subsequent mortgage given by his mortgagor should be prior and superior to the first, assigned his note and mortgage after maturity to a good-faith purchaser. That purchaser brought suit to foreclose, and the second mortgagee pleaded the agreement with the assignor. Held, that the assignee took his mortgage exempt from the equities of the second mortgagee. See, also, *Blake v. Koons*, 71 Iowa, 356; *Bank v. Fletcher*, 44 Iowa, 252; *Vandercook v. Baker*, 48 Iowa, 199. We need not further speculate on the rights of an assignee of an ordinary judgment, for intervener is something more than that. He is the assignee of a mortgage. True, that mortgage has gone to decree, but the decree partakes of the nature of the instrument on which it is based, and May should be treated as the assignee of

a mortgage. The distinction between a mortgagee and an ordinary lienholder is pointed out in *Boggs v. Douglass*, 105 Iowa, 344. A mortgagee of real property is treated as a purchaser, under our recording acts, and is entitled to rely on the records as they exist when he parts with his money. *Barney v. McCarty*, 15 Iowa, 510, and cases cited under section 2925 of the Code. Of course, an attaching or judgment creditor is not such a purchaser, but holds a lien only on such interest as the debtor in fact had in the land. If a mortgagee is to be treated as a purchaser, and is entitled to rely on the records, we see no reason for holding that his *bona fide* assignee for value may not rely on them. Indeed, we think he may. *Blunt v. Norris*, 123 Mass. 55 (25 Am. Rep. 14). *Yerger v. Barz*, 56 Iowa, 77, recognizes this principle, although in that particular case the assignee was held entitled to no greater rights than his assignor, because he bought with constructive knowledge of the fact that his mortgage was not recorded. The cases to which we have already referred were cited, approved, and held inapplicable.

It must be borne in mind that we are not dealing with the law merchant, or with the rules ordinarily applicable to assignments of choses in action, but with the effect to be given our recording acts, and the rights of the assignee of a mortgage who relies on a recorded release; hence few, if any, of the cases cited by plaintiff's counsel are in point. The precise question now before us seems to be ruled by *Mather v. Jenswold*, 72 Iowa, 550; *Weidner v. Thompson*, 69 Iowa, 36; *Powers v. Lafler*, 73 Iowa, 283. In *Vannice v. Bergen*, 16 Iowa, 555 (85 Am. Dec. 513,) it is said: "If after such discharge [release of mortgage by merger or otherwise,] without notice of the fraud or [mistake,] and before the revival of the incumbrance, a third party should part with his money upon the faith of such discharge, it would be manifestly wrong and inequitable to permit the revived lien to be asserted as against such intervening rights." Equity will not set aside the release

of a mortgage, and keep the incumbrance alive, when such proceeding would result in injustice to others. *Starr v. Ellis,* 6 Johns. Ch. 393; *Livermore v. Maxwell,* 87 Iowa, 705. Ordinarily the assignee of a mortgage has no greater rights than his assignor. *Sims v. Hammond,* 33 Iowa, 368. But when he parts with his money in good faith on the strength of a recorded release of a prior mortgage, equity will not permit the cancelation of the release to his prejudice. *Powers v. Lafler,* 73 Iowa, 283. In that case, *Sims v. Hammond* and *English v. Waples,* 13 Iowa 57, are explained, and their application limited. While there is some little confusion in our cases, the ones we have cited fully justify the decree of the trial court, finding that the release of the mortgage should not be set aside. On principle, no other conclusion seems permissible, if we are to look to the equities of the case. Appellant is defeated by his negligence in releasing his mortgage, and is also estopped under the facts disclosed from asserting that the release was the result of mistake or inadvertence. Even in those states which hold that an assignee of a mortgage after due takes it subject to latent equities of third parties, the doctrine of estoppel is recognized. See *Moore v. Bank,* 55 N. Y. 41 (14 Am. Rep. 173).

If intervener were relying on the doctrine of merger alone, it may be he should be held to notice of plaintiff's equities. But he is not relying on the supposed intent of plaintiff. Here there was an express release of record when he purchased the Kern & Scofield mortgage, and plaintiff is clearly estopped from saying that his mortgage of $1,000 was released through mistake. See Jones, Mortgages (3d Ed.) sections 605, 608, 966. Kern & Scofield had procured their foreclosure judgment and decree when plaintiff executed his release, and plaintiff was bound to knowledge of their judgment. The equities are clearly with the intervener. The trial court found that he was entitled to redeem on paying plaintiff the sum of $502.53,

with interest, and fixed March 1, 1901, as the time. That time has already expired, and, if intervener has not made redemption, the time for doing so will be extended until March 1, 1903, at which time he will pay the amount found due by the trial court, with interest, according to the terms of the original decree.

Th<sup> </sup> court below also found that, upon intervener's making redemption, the title to the land should be quieted in him. This is complained of, because it is said plaintiff

4. RIGHT of redemption. has the right to redeem from May. This contention is sound. Plaintiff, as the holder of the title under his sheriff's sale, and as the owner of the $1,000 mortgage, which, as we have said, cannot be asserted against May, but which is nevertheless good against the other defendants, has the right to redeem from intervener, if he so elects; and the decree will be so modified as to permit him to make redemption. This election must be made, however, on or before April 1, 1903, or his right thereto will be held barred, and intervener's title quieted in him. Should plaintiff conclude to redeem, he shall do so by following the statute with reference to redemption, except as to time.

As thus modified, the decree will stand affirmed. Plaintiff will pay the costs of this appeal.—MODIFIED and AFFIRMED.