MARY R. NOVOTNY, Appellant, v. JOSEPH HORECKA et al., Appellees.

**HOMESTEAD:** **Abandonment—Nonmutual Abandonment.** The abandonment of a homestead by a husband without the consent of the wife in possession is ineffective as to the wife. (See Book of Anno., Vol. 1, Sec. 10135, Anno. 44.)

**HOMESTEAD:** **Abandonment—Nonvoluntary Removal.** An abandonment of the homestead by a wife may not be predicated on her *involuntary* absence from the property: i. e., her removal from the property in compliance with a court order which practically evicted her, pending divorce proceedings.

**HOMESTEAD:** **Exemption—Judgments on Loans to Pay Alimony.** Judgments against a husband on obligations contracted since the acquisition of a homestead are not liens on the homestead which is awarded to the wife in divorce proceedings as alimony, even though the judgment be for money borrowed by the husband to pay temporary alimony and attorney fees for the wife in said proceedings.

Headnote 1:  29 C. J. p. 951.  Headnote 2:   29 C. J. pp. 939, 940 (Anno.)  Headnote 3:  19 C. J. p. 341 (Anno.)

*Appeal from Benton District Court.*—JAMES W. WILLETT, Judge.

Suit to remove the apparent lien of certain judgments from property claimed by the plaintiff to be homestead. Decree for defendants, and plaintiff appeals.—*Reversed.*

*Snyder & Snyder,* for appellant.

*Tobin, Tobin & Tobin,* for appellees.

Morling, J.—The plaintiff, Mary R. Novotny, formerly Mary R. Prochaska, and Elmer W. Prochaska, then husband and wife, in 1912 acquired the premises in controversy in Belle Plaine as their home, and with their children occupied them until October, 1918, when the plaintiff commenced suit for divorce, and obtained an order restraining the husband from coming on the premises. The defendant in that suit filed a cross-petition for divorce. In March, 1919, the former order was set aside by an order providing:

"The defendant is restored to his rights to use and occupy his home in Belle Plaine, Iowa, and to have the care, custody, and control of his two minor children, Wilhelmina and Caroline Prochaska, pending the findings and decision of the court in this cause. The plaintiff is, however, granted the right to see and visit with them at reasonable hours and places during that time."

In June, 1919, decree was entered, dismissing the plaintiff's petition, and granting to the defendant husband a divorce on the ground of plaintiff's adultery. The decree provided that the plaintiff should receive no alimony. It awarded to defendant "his home in Belle Plaine, Iowa, together with all furniture * * *" The decree found that the plaintiff was not a fit person to have the care of her children, and, finding that the defendant's home had been broken because of plaintiff's conduct, authorized defendant to leave the children with his sister, at Garner, Iowa. The decree restrained the plaintiff from interfering with the defendant or with his sister, but granted to her the right to occasionally visit the children. The plaintiff appealed, and in June, 1921, this court reversed the lower court; but no divorce was granted to the plaintiff. Rehearing was de-

nied October 1, 1921.  Procedendo went down October 6, 1921. *Prochaska v. Prochaska* (Iowa), 183 N. W. 417 (not officially reported).  Afterward, the husband brought a divorce suit on the ground of desertion, making other allegations probably intended to set up cruel and inhuman treatment.  The defendant (plaintiff here) filed a cross-petition for divorce, alleging desertion.  In May, 1923, decree was entered, granting to the defendant wife (plaintiff here) a divorce, awarding to her the property in controversy and the custody of the children.

Retracing this narrative, let us state that the husband, in December, 1918, moved to Miami, in Monroe County, which he says has been his place of residence ever since, with the intention of making it his home.  The wife continued to occupy the home until the restraining order in March, 1919.  The first decree, as has been noted, awarded to defendant "his home in Belle Plaine, Iowa, together with all furniture," etc.  When the order of March, 1919, was granted, the plaintiff wife left the home, because, as she says, "it was the order of the court that I should leave the premises."  She says she never voluntarily left; that she just took some of her clothing and wearing apparel, and shortly after took some other clothing and personal property.  In April, 1919, the husband put a tenant in possession of the premises.  The plaintiff says she never consented to the lease, and did not receive any of the rents.  The household goods were sold, but she did not consent to the sale or receive any of the proceeds.  Plaintiff says that the husband never told her that he claimed to have abandoned the property as a homestead.  She says that she never consented or agreed to any abandonment by the husband of his homestead rights, if he made any, and did not voluntarily leave the premises.  At some time undesignated, she says, she got an invitation from the husband to live with him in Miami, but it was not made in good faith.  The plaintiff says that she did not think that the Supreme Court gave her the right to occupy the place the same as before.  In November, 1921, the plaintiff filed in the recorder's office an affidavit claiming the property in question as her homestead, and stating that she never relinquished her homestead rights in it.  In her answer in the second divorce case, she denied that her husband's claim of residence in Miami was in good faith, and stated that it was for the

sole purpose of depriving her of her homestead rights. She averred that he had driven her from her homestead and had received the rents. After she received her divorce, in June, 1923, the plaintiff proceeded to put the property in repair, and took possession and occupied it as her home.

The husband, in July, 1921, confessed four judgments in favor of the defendants, and in July, 1922, confessed a second judgment in favor of one of them. It is to remove the apparent lien of these judgments that this suit is prosecuted.

I. It is claimed that the husband abandoned the property as a homestead in December, 1918, and that the property then lost its homestead character. The plaintiff, however, was then re-

1. HOMESTEAD: abandonment: nonmutual abandonment.

siding on the premises, occupying them and claiming them as her home. It is well settled that, under the circumstances of this case, the husband had no authority to bind the plaintiff by any attempted abandonment. *Vittengl v. Vittengl*, 156 Iowa 41; *Lunt v. Neeley*, 67 Iowa 97; *Painter v. Steffen*, 87 Iowa 171; Code of 1897, Section 2981.

II. It is claimed that the plaintiff lost her homestead rights by her own nonoccupancy. The evidence is clear that the plaintiff occupied the property, claiming it as her home, until the

2. HOMESTEAD: abandonment: nonvoluntary removal.

restraining order of March, 1919, was made, and that the order procured by the husband was very naturally understood by the plaintiff as evicting her from her own home. The decree of June, 1919, also procured by the husband, branded his wife as an adulteress, deprived her of any alimony, awarded to him "his home," with all the furniture, and the care of the children, and authorized him to remove the children to a distant town, reserving to the plaintiff only an occasional right of visitation there. Meantime, the husband had put other people in possession of the property, had sold the furniture and received the proceeds, and was collecting the rent. The only recourse left to the plaintiff was to appeal. She did appeal. The decree against her was reversed, and shortly after the procedendo was filed, she procured to be spread upon the public records of the county an assertion of her homestead rights. The husband then sued her. His suit was dismissed. A divorce was granted to her, together

with the home, and the care of the children was granted to her. Up to this time she was justified in assuming that she had no authority to enter or take possession of the home. Her absence up to this time was not voluntary. Although she does not say, in so many words, that she always intended to retain her homestead rights, notwithstanding her absence, she could not be expected, in view of the charges which her husband was making against her, and in view of the restraining order and the decree and the later proceedings, to do any more than she did. She was driven from her home by her husband. So driven, she lost none of her rights; forfeited none of her immunities or privileges as a wife. She retained her homestead rights to the same extent as if she had remained in the household and had continued to reside with her husband. *Barker v. Dayton,* 28 Wis. 367; *Sherrid v. Southwick,* 43 Mich. 515 (5 N. W. 1027); *Keyes v. Scanlan,* 63 Wis. 345 (23 N. W. 570); *In re Murphy's Estate,* 46 Wash. 574 (90 Pac. 916); *Swingle v. Swingle,* 36 N. D. 611 (162 N. W. 912). This is in accord with the general rule that abandonment, to be of any avail to one seeking to take advantage of it, must be voluntary. *Bennett v. Bennett,* 208 U. S. 505; *Huffman v. Smyth,* 47 Ore. 573 (84 Pac. 80).

III.  The husband could not, by his own act or neglect, deprive the plaintiff of her property rights in her homestead, either by conveyance or by suffering a judgment to be recovered against him. *Vittengl v. Vittengl,* 156 Iowa 41; *Foster v. Hobson,* 131 Iowa 58; *Lunt v. Neeley,* 67 Iowa 97; *Keyes v. Scanlan,* supra. No estoppel is claimed, and none can be successfully asserted, on this record. *Pagel v. Tietje,* 193 Iowa 467; *Foster v. Hobson,* 131 Iowa 58.

3. HOMESTEAD: exemption: judgments on loans to pay alimony.

IV.  The defendants claim that it is inequitable to remove the lien of these judgments, because some of them were for money advanced to the husband to pay the plaintiff alimony and attorney fees. Two of them appear to be for attorneys' fees. One of them is for money advanced to pay the claim of plaintiff's father against the property.

There is not much equity in compelling plaintiff to repay a part of the money that was awarded to her to be used in her support and defense against the charges which her husband

made against her, and which have been conclusively adjudged to have been unfounded, nor is there any equity in compelling her to pay her husband's expenses in prosecuting her on such charges, or in defending himself against her assertion of her rights. Regardless of this, these judgments and the judgment for money loaned are judgments against the husband. On the record, they are his debts, and not hers. The only question here is whether those judgments are a lien on the plaintiff's homestead. The husband could not grant such a lien, nor could one be obtained by involuntary proceedings against him. The liens are claimed only through the husband. The rights claimed by the defendants are from the husband, and cannot rise higher than their source. Defendants have established no equitable right to a retention of liens.

V. The defendants have moved to dismiss the appeal because the abstract practically sets out the record in full, and because the appellant's argument does not comply with the rules. Alternatively, the defendants ask that the cost of printing the abstract and appellant's argument be taxed to the appellant.

The abstract is altogether too voluminous. One half of the expense of printing the abstract of the record will be taxed to the appellant. The appellant's argument sets out the nature of the suit and the issues more elaborately than necessary, but it is not in such violation of the rules as to require any penalty.

The motion to dismiss is overruled. The decree is—*Reversed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.