SPAFFORD v. WARREN ET AL.

1. **Husband and Wife**: RIGHTS AND LIABILITIES OF WIFE. By the laws of this State the wife has similar property rights, and is chargeable with similar obligations, with the husband under like circumstances, and coverture is no defense against the enforcement of the rights of others growing out of her contracts.

2. ———: ———: HOMESTEAD. The wife may ratify a defective and void conveyance of her homestead, in all cases where her husband could ratify such an act.

3. ———: HOMESTEAD: RATIFICATION OF VOID CONVEYANCE. A void deed of a homestead, in all cases where a similar deed of other property could be ratified, may be ratified by the assent or contract of the parties, expressed or presumed from their acts.

4. ———: ———: ———. Where a conveyance of the homestead by the wife was void, but she surrendered possession of the property voluntarily, made no objection to the grantee's title when in her presence he offered to sell it, and permitted him to remain in quiet possession for more than three years, and make improvements without protest, *held*, that her conduct amounted to a ratification of the deed.

*Appeal from Tama District Court.*

FRIDAY, OCTOBER 19.

ACTION in chancery to set aside a deed for the homestead of plaintiff, executed by her and her husband, and to quiet the title thereof. The relief prayed for in the petition was granted by the decree of the court, from which defendants appeal. The facts of the case are found in the opinion of the court.

*Stivers & Leland*, for appellants.

*Henderson & Merriman*, for appellee.

BECK, J.—I. The facts of the case as they are disclosed by the pleadings and testimony are as follows:

1. The plaintiff, with her husband, John B. Spafford, in July, 1872, was in the occupancy of a homestead the title of which was in the husband. It was incumbered by a mortgage

and delinquent taxes to the amount of about one-fourth its value.

2. At the time the husband, who was a merchant, was largely in debt. He had, before this time, solicited his wife to join in a deed or mortgage of the homestead to relieve him of his financial embarrassments, which she had refused to do.

3. Upon the day named she consented to execute a mortgage on the homestead and other real estate owned by her husband, to secure a large sum, exceeding probably the value of the property, which her husband owed to Warren. Her husband prepared an instrument for his and her execution, leaving the places for the name of the grantee and the description of the property conveyed blank, to be afterwards filled up. While the instrument was in this condition it was acknowledged by the husband and wife before a proper officer. The husband and wife both testify that they supposed, at the time, the instrument was a mortgage. It was left in the possession of the husband to be used according to the understanding of the parties, in securing defendant, Warren. The wife left home upon a visit, and during her absence the husband discovered that the blank instrument executed by her and himself was a deed absolute. He filled the proper blank with the description of the property which he and his wife intended to incumber by the mortgage.

4. On the 22d day of October, 1872, having bargained a sale of the homestead to defendant, Warren, he filled the blank in the instrument executed as aforesaid by the plaintiff with the name of defendant. The consideration agreed upon was paid by defendant discharging part of the husband's indebtedness to a bank, which had been transferred to it by defendant, and by assuming and paying the mortgage and delinquent taxes upon the property.

5. The defendant, Warren, had no information of the circumstances under which the deed was executed, further than that the blank for the name of the grantee was not filled when the deed was executed. He was informed that it was the intention of the husband and wife to convey by the instrument all the property described therein, and that it had been executed

and left with the husband during the wife's absence, in order to empower him to convey the property while she was away. Warren re-conveyed by quit-claim to Spafford the property described in the deed other than the homestead.

6. In November, 1872, Warren executed a mortgage upon the property in controversy to Mary R. Stevens, who is made a defendant in this action.

7. Upon the return of plaintiff in October, 1872, she was informed by her husband of the uses to which the instrument executed by them had been put, and of the sale and conveyance of the homestead by him by means of that instrument. She consulted lawyers in reference to her rights in the property, and was informed that they had not been divested by the conveyance.

8. The plaintiff and her husband occupied the house until the month of March, following the conveyance. While he denies that he paid rent, he admits that he was charged with interest upon his indebtedness, which was canceled by the transaction, while he occupied the property.

9. While they were so in the occupancy of the house, Warren offered the property for sale, and took one person, with whom he was negotiating with that view, to see it; they were met by plaintiff, who knew the object of the visit, and set up no claim to the property.

10. In March, 1873, the plaintiff and her husband removed from the property and a tenant of Warren went into it. This removal plaintiff testifies was made on her part unwillingly, but there is no testimony tending to show that she made resistance thereto, or at any time refused to leave the house. She made no effort to retain possession, and uttered no protest against leaving, and the testimony does not disclose any declaration by her, before her removal, of an intention to make efforts to recover her rights in the property.

11. This action was commenced more than three years after Warren purchased the property, and nearly three years after plaintiff removed from it. She explains the delay in such manner as to authorize the inference that it was brought about

by the fear that her husband would be prosecuted criminally on account of the transaction.

12. Warren had, prior to the commencement of this action, paid off the mortgage resting upon the property, and discharged Spafford's debt, which he had assumed to pay as the consideration for the purchase. He also had executed the mortgage to defendant, Stevens, and made certain improvements upon the house.

II. It may be admitted, for the purposes of this case, that the circumstances under which the plaintiff executed the deed for her homestead would render the instrument void, unless it has been validated by her acts which amount to a ratification, and estop her to deny its sufficiency. We are, therefore, required to determine, 1. Whether the wife is capable of ratifying a void deed of her homestead, and 2. Whether the facts we have found, as above stated, are sufficient to establish a ratification by her.

III. Under the statutes of this State, the wife is clothed with the same property rights and charged with the same liabilities as the husband. Indeed, it cannot be said that, as to her property, she is deprived of any rights which the husband enjoys that relate to his, or that any remedy is denied her or any liability removed from her, which are possessed by or imposed upon the husband. She can control her own property, vindicate her individual rights, and bind herself by contract as fully and to the same extent as her husband. The quotation of two or three provisions of the Code will support the correctness of these statements, and will tend to elucidate the questions before us.

1. HUSBAND and wife: rights and liabilities of wife.

"Section 2202. A married woman may own in her own right real and personal property acquired by descent, gift or purchase, and manage, sell, convey and devise the same by will, to the same extent and in the same manner that the husband can property belonging to him."

"Section 2210. A husband or wife may constitute the other his or her attorney in fact, to control and dispose of his or her property for their mutual benefit, and may revoke the same to the same extent and manner as other persons."

"Section 2213. Contracts may be made by a wife, and liabilities incurred, and the same enforced by or against her to the same extent and in the same manner as if she were unmarried."

"Section 2215. Neither husband nor wife can remove the other, nor their children, from their homestead without his or her consent." * * * * * * * *

"Section 2211. A wife * * * * * may prosecute and defend all actions at law or in equity for the preservation and protection of her rights and property, as if unmarried."

These provisions, it must be admitted, completely emancipate the wife from all the bonds recognized by the common law, saving those of affection, and moral obligation. Being clothed with all the natural rights enjoyed by the husband which she may exercise free from his control, the law will hold her subject to the same rules which restrict and control the rights of the husband, and enforce his obligations assumed by contract or imposed by law for the protection of other members of society. Coverture, in Iowa, ought to be no shelter to the wife against the enforcement of the rights of others growing out of her contracts. As she has all the rights of the husband, she must assume all his obligations. When the law will imply a contract binding the husband, under the same circumstances it will raise one against the wife. In short, the statute, in bestowing upon her equal property rights with the husband, imposes upon her the same obligations he bears.

The homestead of the husband and wife can be conveyed only by a joint instrument in which both concur, and which both execute. Code, § 1990. The form and manner of the execution of the instrument is not required to be different from conveyances of other property.

It cannot be doubted that if the husband should informally execute a deed for the homestead, the wife joining as required by law, he could subsequently ratify the deed, so as to be barred of all claim to the property. Under the foregoing views the same rule must apply to the wife. It follows, too, that if each fails to execute the instrument as required by law, they may subsequently jointly ratify the deed.

2.——: ——: homestead.

And these doctrines require us to hold that an act which would amount to ratification by the husband will bind the wife to the same extent.

It follows from these conclusions that the wife may ratify a defective and void conveyance of her homestead, in all cases where her husband could ratify such an act.

IV. We must inquire just here whether a defective or void conveyance of the homestead may be made valid by ratification. The only restriction imposed upon the conveyance of the homestead is the requirement of Code, § 1990, that the husband and wife must "concur in and sign the same joint instrument." It is needless to inquire whether the homestead may be conveyed without a joint instrument, for in the case before us such an instrument was executed. But by reason of defects of its form, not in its execution, it is void. The power which the husband and wife were authorized to exercise jointly was attempted to be exercised in the manner required by law. In making the deed valid by ratification, the requirement of the statute to the effect that a joint instrument shall be executed is not disregarded, for it was in fact executed by the parties.

3. ——:homestead: ratification of void conveyance.

We know of no reason, based upon legal principles, why a void deed for a homestead, in all cases where ratification could be made were the property of a different character, may not be ratified by the assent or contract of the parties expressed or presumed from their acts. We do not discover any reason for holding that the character of the property deprives the parties of the right to ratify their void deed. *Stinson v. Richardson*, 44 Iowa, 373, is not in conflict with our views above expressed.

V. We are now required to determine whether the acts of plaintiff amount, in law, to a ratification of the deed, or rather whether a presumption of ratification may be based thereon. We can scarcely imagine a case affording more ample grounds upon which to rest an inference of ratification of an invalid deed, than is presented by the acts of plaintiff, or disclosed by the testimony in this case. She had full knowledge of her rights, yet she surrendered the property without compulsion, voluntarily, though probably regretfully,

4. ——. ——; ——.

without protest or claim that at any time she would attempt to recover it. She made no objection to defendant's title when, in her presence, he offered to sell it. She permitted him quietly to hold possession for three years and more, without a word of warning, though he in that time made improvements thereon and discharged incumbrances resting on it. In a word, all her acts were such as to show she admitted the deed to be good, and that defendant's title was without a defect. These acts were open and known to defendant, and upon them he acted, or was authorized to act. The law will estop plaintiff to deny defendant's title, and will raise a conclusive presumption that her deed was ratified, and its infirmities thereby cured. It requires no argument or citation of authorities to show that the acts of plaintiff, as disclosed by the testimony, would, were she a *feme sole*, establish a ratification of the deed. Her coverture, under our statutes, as we have seen, will not aid her to perpetrate a wrong upon another, nor shield her from the consequence of her voluntary acts. From these the law raises a presumption that she has assented to the validity of her deed, and thus cured its infirmities by ratification.

A decree will be entered in this court dismissing plaintiff's petition.

REVERSED.