DANIEL CORBIN, Appellant, v. W. T. MINCHEN, Appellee.

**Homestead:** CONVEYANCE OF: VALIDITY. A husband and wife purchased eighty acres of land, and occupied the same with their children for about six months, when the husband absconded because of the commission of a criminal offense. About four months later the wife sold the property to one U., giving her individual warranty deed therefor, and soon afterwards surrendered possession of the premises. Subsequently the husband, having returned home, executed to U. a quitclaim deed to the property. About three years afterwards, with constructive notice of both of the above conveyances, and while U. was in actual occupation of the premises, the defendant obtained a quitclaim deed to said land from U.'s grantors, in which both the husband and wife joined. *Held,* that the separate conveyances of the husband and wife to U. were sufficient to divest them of all title to the land conveyed, and that the defendant, having taken his deed with constructive notice of U.'s rights, acquired no title thereby to the property.

*Appeal from Audubon District Court.*—HON. H. E. DEEMER, Judge.

MONDAY, JANUARY 26, 1891.

THIS is a suit in equity to quiet the plaintiff's alleged title to a farm of eighty acres in Audubon county. The defendant, by his answer, denied the plaintiff's title, and claimed to be the owner of the land, and prays that his title be quieted as against plaintiff. He also seeks to recover the rents and profits of the land. There was a hearing on the merits, and a decree for the defendant, which included the sum of one hundred and sixty dollars for the use and occupation of the land. The plaintiff appeals.

*Cole, McVey & Clark,* for appellant.

*Geo. W. Paine,* for appellee.

ROTHROCK, J.—The facts pertaining to the claims of the respective parties to the land, so far as they

appear in the record, are not the subject of dispute.
They are in substance as follows:   One George D.
Grove was formerly the owner of the farm.   On the
sixth day of March, 1883, he conveyed the same to Eliz-
abeth Breckenridge, and the deed of conveyance was
filed for record on the eighth day of the same month.
Elizabeth Breckenridge, with her husband and two
children, resided in a dwelling-house on the land from·
the spring of 1883 until January 1, 1884, and they cul-
tivated and raised crops on the premises in the year
1883.   In September or October, 1883, said Charles
Breckenridge left the state because of a criminal charge
against him, and did not return until May, 1884.   On
the tenth day of December, 1883, Elizabeth Brecken-
ridge sold and conveyed the premises by warranty deed
to George and Henry Umphrey, and said deed was filed
for record the next day.   Soon after making said con-
veyance, Mrs. Breckenridge removed from the premises.
On the thirtieth day of May, 1884, Charles Brecken-
ridge, having returned to the state, made and executed
to George and Henry Umphrey a quitclaim deed of said
farm, which deed was duly acknowledged, and it was
filed for record on the same day.   George and Henry
Umphrey took actual possession of the land when it
was conveyed to them by Mrs. Breckenridge, and their
possession continued uninterrupted until the fifteenth
day of July, 1884, when they sold the same to the
plaintiff herein by a written contract by which the
plaintiff bound himself to pay for said land the sum of
twenty-four hundred dollars, part of which considera-
tion was agreed to be paid in the form of a mortgage
upon the land, held by one Lombard, and the balance
was to be paid directly to said Henry and George
Umphrey in yearly payments.   On the ninth day of
December, 1887, George and Henry Umphrey conveyed
the land by special warranty deed to the plaintiff.   The
exception in the warranty in the deed was, that the
plaintiff assumed to pay the Lombard mortgage and
interest.   This deed was filed for record on the fourth
day of February, 1888.   The plaintiff did not take

actual possession of the land when he made his contract of purchase. It was then in possession of one Thompson, who was a tenant under George and Henry Umphrey. Thompson removed from the premises in March, 1885, when the plaintiff took possession, and continued to hold the same until the trial of this suit. These are the facts upon which the plaintiff bases his claim to the farm. The defendant claims the land by virtue of a quitclaim deed made, executed and delivered to him on the thirteenth day of June, 1887, by said Elizabeth Breckenridge and Charles Breckenridge for an expressed consideration of five hundred dollars. This quitclaim deed was filed for record on the twenty-seventh day of September, 1887.

The statute relating to the alienation of homesteads provides, that "a conveyance or incumbrance by the owner is of no validity unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." Appellee claims that the quitclaim deed executed to him by Elizabeth Breckenridge and her husband is the only valid conveyance or disposition they have made of the land, because it was their homestead, and they united in and signed the same joint instrument. It does not appear from the record before us, from whence Breckenridge and his wife came, nor whither they went after they surrendered possession of the land. The only evidence that the land was a homestead consists in the fact that they resided thereon for about ten months. No homestead plat was made and recorded as provided by law. Whether, after Breckenridge returned to the state, a homestead was acquired elsewhere does not appear. The plaintiff purchased the land from the Umphreys upon what appears to have been a full consideration, took possession from them, and held it for more than three years before the defendant claims to have acquired any interest therein, and his interest was acquired with full notice of the plaintiff's possession, which implied notice of all the rights acquired by his purchase from the Umphreys. If the defendant had made inquiry of the party in possession,

he would have ascertained that the plaintiff had paid in good faith, or contracted to pay, the sum of twenty-four hundred dollars for the land. He is charged with knowledge of all these facts, and yet he voluntarily took a quitclaim deed for the land for an expressed consideration of five hundred dollars, and insists that the plaintiff's claim of title is devoid of equity.

The homestead law is a wise provision for the benefit of the family. It ought not to be used as an aid to speculative ventures in the nature of attacks upon defective titles. In nearly every case in which this court has been called upon to determine homestead rights, the claim of homestead has been presented by the party entitled to enjoy the benefits of a home upon the land in controversy. It must be conceded that the occupancy of the land was sufficient to impress it with the homestead character, and that Elizabeth Breckenridge or her husband could have held forty acres of it as a homestead as against all claims but purchase money and previous debts contracted by her. But the facts show that they made no claim to hold the land as a homestead. The husband absconded before the deed was made by his wife to the Umphreys; and the conveyance by her, and her abandonment of the premises as a home, were parts of the same transaction. It was not a case of a subsequent abandonment, as in *Bruner v. Bateman*, 66 Iowa, 488. The conveyance and abandonment were simultaneous acts. That the husband had abandoned any claims of homestead is made manifest by the fact that upon his return he made no claim to the land as a homestead, but, on the contrary, made a quitclaim deed to the plaintiff's grantor.

The claim of the defendant appears to us to amount to this: That he can lawfully assert the homestead right in all of the eighty-acre farm, notwithstanding the fact that the only parties who could have asserted that right did not at any time make any claim of homestead to the forty acres which they might have held as a homestead. We have not thought it necessary to review the numerous decisions of this court in determining the

rights of parties under the section of the statute above cited. No case will be found where the facts are substantially the same as here presented. It appears from the evidence that by the contract of purchase the plaintiff bound himself to pay to George and Henry Umphrey the sum of five hundred dollars, June 1, 1885; five hundred dollars, June 1, 1886; and four hundred dollars, June 1, 1887. All of these payments were due before the defendant received the quitclaim deed under which he claims, and it is to be presumed that these installments were paid when they became due. The plaintiff knew that Breckenridge and wife occupied the land for part of the year 1883, but he had no knowledge that they claimed any homestead right therein until the defense was set up in this suit. We are satisfied that he was induced to believe, from the acts of Breckenridge and wife, that they made no claim to a homestead in the land, and that, if they could rightfully have made such claim, they ratified the invalid conveyance made by them.

In the case of *Lunt v. Neeley*, 67 Iowa, 97, the wife of the plaintiff held a contract or title bond for a conveyance of a homestead. The plaintiff left the state, and went to Colorado, with the purpose of establishing himself in business and removing his family to that state. He left his wife and children in possession of the homestead. After he left this state, his wife sold her interest in the property, and assigned the title bond to one Payne. The husband did not concur in and sign the assignment. Payne paid the balance of the purchase money, and then conveyed the property to one Warren. The wife of the plaintiff continued to occupy the homestead with her family for some two months after she sold it, when she yielded possession to Payne, and removed to Colorado, and joined her husband. Afterwards the plaintiff and family returned to this state, took up their residence in another dwelling-house near the homestead, and soon thereafter the wife of the plaintiff died, and plaintiff brought an action to quiet his title to the property, claiming that it

was his homestead. It was held that the assignment of
the title bond by the wife alone was void; that when
the right of homestead has once attached to the prop-
erty it can be divested only by a joint conveyance, or
by the abandonment of the property as a homestead by
both the husband and wife. But it was further deter-
mined in that case that the plaintiff was not entitled to
a decree. The court said: "It does not follow, how-
ever, that the subsequent purchasers of the property
acquired no interest in it which they can assert against
the plaintiffs. If C. R. Warren is in the position of an
innocent purchaser, he is entitled to be protected
against the claim urged by them, notwithstanding the
invalidity of the sale and assignment by Mrs. Lunt.
The bond and assignment to Payne were of record at
the time he made the purchase from Mrs. Payne. The
record of these instruments imparted no notice of a
homestead right in favor of the Lunts in the property,
and there was nothing in any of the conveyances con-
stituting the chain of title which indicated the existence
of such right, and they were not in possession, or in
any manner asserting the right. He purchased from
one who was in possession of the property, and who
appeared by the record to have a perfect title to it, and
he had no actual notice either of the claim now asserted
by plaintiffs, nor of the fact on which it is based. He
is clearly an innocent purchaser of the property, and as
such should be protected." The rule announced in
that case is decisive of this. Indeed, the equities of
the plaintiff appear to us to be stronger and more
persuasive than the claim of the purchaser in the cited
case. Further elaboration appears to us to be unneces-
sary.

The decree of the district court is REVERSED.