STATE EXCHANGE BANK OF PARKERSBURG, Appellant, v. M. J. NOLAN et al., Appellees.

**TRUSTS:** Resulting Trusts—Payment by One and Title in Another.
1  Principle reaffirmed that a husband who takes title to real estate which has been wholly paid for by the wife will be deemed to hold the title in resulting trust for the wife. (See Book of Anno., Vol. 1, Sec. 10049, Anno. 21 *et seq.*)

**ESTOPPEL:** Equitable Estoppel—Nonchange in Position. The plea
2  of a mortgagee that a mortgagor was estopped to deny the validity of his signature to the mortgage because, when the mortgagor was thrown into bankruptcy, the mortgage prevented the mortgagee from participating in dividends to unsecured creditors, must fall when there is no showing that there were any such dividends.

**HOMESTEAD:** Incumbrance—Invalid Signature—Nonratification. The
3  invalid signature of a husband to a mortgage on the homestead— invalid because of his inebriate condition when he signed—is not ratified by a delay of some eight months in repudiating such signature (1) when the delay was caused in part by his continued in-

ebriate condition and in part by a proper investigation by his at-
torney, and (2) when he did not actually intend to ratify.    (See
Book of .Anno., Vol. 1, Sec. 10147, Anno. 62 *et seq.*)

**Headnote 1:**  39 Cyc. p. 138.  **Headnote 2:**  21 C. J. p. 1252; 29 C. J.
p. 913.  **Headnote 3:**  29 C. J. p. 916 (Anno.)

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

### MARCH 16, 1926.

SUIT in equity, to foreclose a mortgage for $6,000 upon the
homestead of the defendants.  The defense was that the mortgage
was signed by the husband, M. J. Nolan, when he was in such
a state of intoxication that he had no comprehension of what
he was doing, and that the wife, Rose Nolan, signed the same
under influence of coercion exerted upon her by the representa-
tives of the bank who obtained the mortgage.  The district court
sustained both grounds of defense, and the plaintiff appeals.—
*Affirmed.*

*Senneff, Bliss, Witwer & Senneff,* for appellant.

*Blythe, Markley, Rule & Clough,* for appellees.

EVANS, J.—The mortgage in question was signed on August
29, 1922.  It was given to secure a debt for $6,000 which had
been owed to the plaintiff by M. J. Nolan for some years.  The
defendants were residents of Mason City.  The mortgage was
signed at their home, and was drawn to cover such home.  Very
important fact questions are presented, and the record presents
a large volume of evidence to be considered.  We have given a
careful reading to this evidence, and reach the conclusion that
we should not interfere with the finding of fact by the district
court as to the disability of the husband and the invalidity of
his signature to the mortgage.  For this reason, we shall have
no occasion to consider separately the question of duress of the
wife.  We are not unmindful of the possibilities of exaggeration
which are always present in the proofs of allegations such as are
interposed in the defense.  It does appear, however, that the
defendants have a large preponderance in number of witnesses,
and that significant and unwilling corroboration of the testi-

mony for the defendants is to be found in the testimony of the plaintiff, and more especially in the testimony of Clark, the only witness for the plaintiff other than its president, Shuler. In view of our agreement with the district court on the fact questions, we will not enter upon a detailed discussion of the evidence.

The plaintiff was represented in the transaction by its president, Shuler, and by Clark. These two constitute its only witnesses. Shuler came from Parkersburg to Mason City, and spent the day in and about the home of the defendants. The evidence for the defendants shows that the husband, Nolan, had become greatly addicted to strong drink, and that he had been in a state of intoxication for nearly two weeks prior to August 29th, and that such was his condition at the time he signed the mortgage, and that he was, at the time, wholly unconscious of what he was doing. The wife was in ill health, and was suffering great pain therefrom; was in great anguish of mind because of the persistent condition of her husband; was greatly distracted by his inability to do business; and was under the influence of great fear of the bank representative. This latter state of mind had been induced by certain statements made to her by Clark, in advance of the arrival of Shuler. These statements were testified to by her, in the first instance, and were of such a nature that they might well have been discounted by the judicial mind, in the absence of corroboration. But Clark, as a witness on cross-examination, admitted the statements, and that he had advised Shuler of what he had said and done. No legitimate reason appears in the record for this affirmative effort to inspire fear. It resulted in a full compliance on her part, without any protest, with every request made upon her. She signed a $6,000 note and a mortgage on her home. This was a full compliance with every request made upon her, up to this point. After this was done, however, and without any preliminary negotiations pertaining thereto, she signed, at Shuler's request, a $5,000 note and two smaller notes. These were in renewal of like notes held by the bank against her husband. The husband's testimony was that this $5,000 note was an accommodation note, and that he was not liable thereon. Nothing had been said about it during the negotiations of the day. The wife

did not even know that she had signed it, and only learned the fact subsequently. The signing was not preceded by any negotiations or discussion on the subject, and the record discloses no plausible reason why she should have signed the same. This fact lends some corroboration to her claim that her will was subordinated to that of Shuler, and that Shuler so knew. With these general observations as to fact questions, we may proceed to a consideration of the argument.

Appellant argues that, though Nolan was under the disability of intoxication when he signed the mortgage, yet his act of signing was voidable only, and not void; that it was, therefore, capable of ratification; and perhaps that he was under the affirmative duty of repudiation. Nolan learned what he had done on the 30th of August. The transaction consisted of the execution of a new note for $6,000, payable on demand, and was then and there signed by Nolan and his wife, and the mortgage executed. Nolan did not affirmatively notify the plaintiff of his repudiation of his act until May, 1923. It is argued that he therefore ratified it. Certain elements of estoppel are also put forward. It appears that, in December following, Nolan was forced into involuntary bankruptcy. His liabilities were more than $150,000. The claim of the plaintiff was scheduled as a secured claim, whereby it received no consideration in the bankruptcy court as an unsecured claim.

It is further urged that the plaintiff's debt antedated the acquisition of the homestead; and that, if a mortgage had not been given, the plaintiff could have brought an action and subjected the homestead to the payment of its debt. It is also urged that it could have had such relief in the bankruptcy court, or at least could have been there protected, with a view to such relief. This argument would be a very potent one if its premise were sustained by the record. The defendants deny that the debt antedated the acquisition of the homestead. Neither party has pointed out to us where in the record we may find the date of the origin of this indebtedness. We have been put to a laborious search therefor, and yet without avail. It does appear that, on and prior to the year 1918, these defendants owned and occupied a homestead at Mason City, and that the same was sold in

1. TRUSTS: resulting trusts: payment by one and title in another.

the year 1918 for $3,500. The title of this homestead was in the wife, and the property belonged to her. A lot was immediately purchased for a new home, and the new home was constructed thereon, which cost more than $20,000. The proceeds of the old homestead went into it, and $7,000 or $8,000 of money belonging to the wife. The balance of the cost was provided by a mortgage for $9,000. The husband made the purchase of the lot, and took title in his own name. In view of the fact that it was all acquired with the money of the wife, he must be deemed to have held the title in resulting trust for her. She was, therefore, the equitable owner of this homestead. The claim of the defendants is that the plaintiff's debt originated in 1919. We find nothing in the record showing an earlier date of origin. Clearly, therefore, the debt did not antedate the acquisition of the homestead, within the meaning of the law. And if it had done so, the homestead, as being the property of the wife, could not be subjected to the payment of the debt of the husband. The premise, therefore, upon which appellant's argument is based, wholly fails.

So far as other elements of mere estoppel are concerned, we find none. This is not a case where a conveyance was made and possession yielded, whereby a claim of the abandonment of the homestead might be successfully urged against the defendants. It is not a case of executory contract, whereby the defendants had been accepting performance and benefits by the other party. It is not a case where innocent parties have purchased in reliance upon the record and upon possession. The transaction was purely unilateral. It operated wholly to the benefit of the mortgagee. Its position was in no manner changed by subsequent events, unless it be that it was prevented by the schedule from participating in dividends of unsecured claims. The record does not disclose that any dividends were declared, or that the plaintiff could have received any dividends on its claim as an unsecured one. It must be held, therefore, that the elements of estoppel are not shown.

2. ESTOPPEL: equitable estoppel: nonchange in position.

On the question of the validity and voidability of the signature of one under the disability of intoxication, the appel-

lant's contention that such execution is voidable only, and not

**3. HOMESTEAD: incumbrance: invalid signature: nonratification.** void, is doubtless correct. But this proposition does not quite reach the statute with which we have to deal. Section 2974, Code of 1897, is as follows:

"No conveyance or incumbrance of or contract to convey or incumber the homestead, if the owner is married, *is valid,* unless the husband and wife join in the execution of the same joint instrument * * *"

The husband's signature must be treated, in the first instance, as no signature. This would invalidate the instrument as to both husband and wife. While it has been quite generally held in all our cases that the failure of the signature of one spouse renders the conveyance or incumbrance *void,* nevertheless it may be cured by ratification. *Spafford v. Warren,* 47 Iowa 47; *Corbin v. Minchen,* 81 Iowa 682; *Epperly v. Ferguson,* 118 Iowa 47; *Luttschwager v. Fank,* 151 Iowa 55. What is deemed to constitute a ratification in such a case is an important consideration.

In *Spafford v. Warren,* 47 Iowa 47, the homestead was conveyed, and possession delivered to the grantee. Later, it was sold by such grantee to another innocent purchaser. Three years after the delivery of possession, the homesteader sought to reassert his right to the homestead. It was held, in substance, that the innocent purchaser was entitled to protection, and that the homesteader was deemed to have abandoned his homestead.

In *Corbin v. Minchen,* 81 Iowa 682, a wife, after the absconding of her husband, gave a warranty deed of the homestead, and surrendered possession of the same. Subsequently, the husband, having returned, executed a quitclaim deed to the purchaser. Three years thereafter, a third party obtained a quitclaim deed from husband and wife, and brought an action against the purchaser to oust him from such homestead. Relief was denied him.

In *Epperly v. Ferguson,* 118 Iowa 47, the husband executed a contract to convey the homestead, in which the wife did not at first join. At a later time, the wife signed such contract, and also joined with the husband in the execution of the deed, pur-

suant to the contract. It was held that her joining in the deed was a complete ratification of the contract, and cured every infirmity.

In *Luttschwager v. Fank,* 151 Iowa 55, the husband executed a contract for the sale of the homestead. Though it was assented to by the wife, it was not signed by her, because it was the mutual belief of the parties that such signature was not necessary. The wife did join in the execution of a deed, which was put in escrow, pursuant to the provisions of the contract. Later, the *purchaser* sought to repudiate the contract, on the ground that it was void as to the vendors, and therefore invalid as to him. In order to cure any infirmity in the transaction, the wife immediately .attached her signature to the contract, having previously joined with her husband in the execution of the deed. It was held in that case that the execution of the deed was a sufficient ratification of the contract. Some distinction is recognized, also, in that case between a contract to convey and the conveyance itself.

The foregoing are the cases in our Reports which have applied the doctrine of ratification, and these are the cases which are cited and relied on by the appellant.

In *Alvis v. Alvis,* 123 Iowa 546, it was held, as a matter of law, that there could be such an abandonment of the homestead that it could pass under oral contract of sale, followed by possession. But the claim of ratification in that particular case was denied, under the facts. In that case, the husband alone executed the deed of conveyance of the homestead. Thirty-five years after the husband had signed the deed and had delivered it to the grantees, the wife attached her signature thereto, and redelivered it to the grantees. During all those years, husband and wife had been in possession of the homestead, the grantees in the deed being their own sons and members of their own family. It was held that the signing by the wife was her own individual act, and did not give a joint character to the conveyance. The deed thus executed was held to be void.

*Drake v. Painter,* 77 Iowa 731, and *Winkleman v. Winkleman,* 79 Iowa 319, were cases of sale of homestead by contract, and a delivery of possession was given to the purchaser. It was

held that such delivery amounted to an abandonment of the homestead right.

In *Alexander v. Vennum,* 61 Iowa 160, both husband and wife signed the same joint instrument, but the wife was insane at the time. The deed was held to be void.

In *First Nat. Bank v. Bryan,* 62 Iowa 42, both parties signed the same joint instrument, a mortgage; but the signature of the wife was procured by duress. The mortgage was held to be void. *Alley v. Bay,* 9 Iowa 509, *Barnett v. Mendenhall,* 42 Iowa 296, and *Bolton v. Oberne,* 79 Iowa 278, were cases in each of which it was held that failure of compliance with the statute rendered the conveyance wholly void.

In *Lunt v. Neeley,* 67 Iowa 97, the homestead was held under bond for a deed. The wife assigned the bond without the concurrence of the husband. Possession was surrendered to the purchaser, who sold the property to another innocent purchaser. It was held that the innocent purchaser should be protected, although the surrender of possession was not deemed an abandonment, as between the original parties. In the *Alvis* case, supra, at page 551, it was said:

"Being void, the parties all stand as though no such instrument had ever been executed. And such attempt at conveyance may not be ratified save by the execution of a joint instrument in substantial compliance with the statute. The separate acts of the parties cannot avail to make good the title."

The foregoing is a sufficient indication of the state of our holdings on the question of ratification. In the case at bar, though it be true that Nolan learned on August 30th what he had done, the fact remains that the representative of the grantee who obtained the mortgage had departed to his remote home, and that the defendant's habits of intoxication continued, and that his disability was comparatively persistent. Shortly thereafter, he went temporarily to a hospital for treatment. Still later, he entered a sanitarium at Minneapolis, for a cure of inebriety, where he remained until the month of December. He returned in time to find himself forced into involuntary bankruptcy. He did consult his attorneys shortly thereafter. These took time to make an investigation of the facts. While it is true that ratification may be inferred from the circum-

stance of long delay in complaining, it is, nevertheless, a question of intention. If from all the evidence it appears that Nolan did not intend to ratify, and that he did no affirmative act that amounted to ratification, then he did not ratify. It will be noted from our review of the cases above cited that in no one of them was ratification found upon evidence the equivalent of what appears in this record.

It must be held, therefore, that not only are the elements of estoppel wanting, but that the claim of ratification is not sustained by sufficient evidence. The conclusion thus reached renders it quite unnecessary that we should discuss other features of the case.

Upon the whole record, the decree of the district court should be affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.