A. R. FLANDERS v. MILLIE C. BOOGE, HARRIS D. BOOGE, JR., and JAMES D. McKNIGHT, Defendants and Appellant, and MINA McKNIGHT, Defendant.

Trusts:  ORAL EVIDENCE: STATUTE OF FRAUDS.  Oral evidence of a contract by which one person agrees to acquire title to land for the benefit of another is within the statute of frauds, and is incompetent for the purpose of establishing the trust.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNER, Judge.

WEDNESDAY, APRIL 6, 1910.

ACTION to quiet title to certain real estate in Sioux City. To the petition J. D. McKnight and his wife, Mina McKnight, filed an answer, alleging that said McKnight is the equitable owner of an undivided one-half of said land and also of lots nineteen, twenty, and twenty-one in block twenty, Morningside addition, and praying for decree quieting title thereto and for judgment of $1,916.33. On hearing, relief was denied defendant, and decree entered as prayed in the petition. The defendant J. D. McKnight appeals.—*Affirmed.*

*F. E. Gill* and *E. P. Farr,* for appellant.

*John F. Joseph* and *J. W. Hallum,* for appellee.

LADD, J.—The plaintiff acquired a house and three lots in Sioux City and also a tract of sixteen acres, save an outlay of $236, as profit in a deal with M. O. Pelletier and C. L. Amick. The latter owned the above property

and a farm of three hundred and seventeen and thirty-eight hundredths acres in Woodbury County and entered into an agreement with Mrs. Pelletier to exchange the same for nine hundred and sixty acres of land in South Dakota. Therein Amick was to be allowed $65 per acre for the farms and $8,500 for the city property, incumbrances to be deducted, and was to pay $35 per acre for the South Dakota land. In payment of the difference, Amick agreed to execute notes amounting to $12,000 and secure payment by a mortgage on the land received and pay the estimated difference of $1,600 on the execution of the contract. At the same time, and as a part of the same transaction, though dated four days later, plaintiff entered into an agreement with Mrs. Pelletier, by the terms of which the latter undertook to convey to him all the property received from Amick upon the payment to her of the sum of $8,440 before March 1st, following, in addition to the $1,600 cash and the mortgage mentioned in the first contract. In other words, plaintiff was to pay Mrs. Pelletier $24 per acre for her land less $1,000 and take Amick's property. Transfers were made accordingly, though plaintiff, instead of Amick, paid the $1,600 specified in the contract between Amick and Mrs. Pelletier, and later he realized enough from the sale of the farm to pay the $8,440 with interest to cover back the $1,600 and to leave a net balance of $502.85. This, and $236 in addition thereto, was required to pay taxes and perfect the title to the house and lots and the acreage. The defendant McKnight bases his claim to an interest in the last-mentioned property and recovery of a money judgment on the contention that the deal was in pursuance of an arrangement between himself and W. S. Flanders, father of plaintiff, that the latter would negotiate the same, take the property in the name of plaintiff, and divide it equally with defendant, and that this was with the acquiescence of the plaintiff.

The evidence showed that defendant, upon ascertaining that Amick was desirous of exchanging his property for South Dakota land, introduced him to F. M. Harding as Mrs. Pelletier's agent, and that he in pursuance of an arrangement then made, went with Amick to see the land. Later Harding informed defendant that he did not care to handle the deal, and that the latter might go on with it. Shortly thereafter, he explained the proposition to W. S. Flanders, and later they signed a written memorandum, saying they entered "into joint deal as real estate agents to work in harmony to close a certain deal between C. L. Amick and F. M. Pelletier. Said Flanders and McKnight hereby agree to equally divide all commissions made by said sale." Flanders proceeded with the negotiations, at his own expense showed Amick other land of Mrs. Pelletier in South Dakota, and orally arranged the deal as finally consummated by A. R. Flanders; defendant acquiescing in his wish that he take no active part, as Flanders was an old acquaintance of Amick. According to defendant's story, W. S. Flanders proposed to take the property in his son's name in order that Amick might not think he was deriving any advantage from the exchange, and plaintiff agreed to sign the memorandum and was fully aware of the arrangement between defendant and his father to divide the profits. This version is corroborated by the testimony of two of defendant's associates in the real estate business. On the other hand, plaintiff testified that he was not aware of the existence of the memorandum or of any understanding between his father and defendant and that he had not talked to said witnesses. His testimony is corroborated by that of W. S. Flanders. The latter related that, when all the details of the deal had been settled orally, he informed defendant that $1,600 would be required, that the latter responded that he had no money to put into the deal, whereupon Flanders replied that he would throw it up and quit, and that a few days later

he met his son near Akron, Iowa, and in the course of conversation told him of the negotiations, and the latter after a few days made, or caused to be made, the contracts as recited. The defendant and an associate unite in saying that the amount stated was $2,000, and that defendant responded that, upon being shown that this would be required to close the deal, he would furnish one-half.

From this recital of the main features of the record, it is apparent that two inquiries arise: (1) Whether plaintiff acquired the property in pursuance of an arrangement between defendant and W. S. Flanders whereby they were to divide the profits to be derived therefrom; and (2) if so, whether such trust may be established by parol evidence. It is unnecessary to pass on the first of these, for conceding that the arrangement may have been such as defendant contends, it might not be established by parol testimony. McKnight parted with nothing, save the information of the possibility of effecting the exchange, given to W. S. Flanders. The latter paid no part of the consideration either to Mrs. Pelletier or Amick. The record conclusively establishes that the $1,600 was paid by plaintiff. The sale of the farm was negotiated by him. So that no trust relation arises from the payment of a part or all of the consideration. If it exists at all, it must be in virtue of the oral agreement under which, according to defendant's contention, plaintiff acquired the title to Amick's property, and by the terms of which this was for the benefit of McKnight and W. S. Flanders. No fraud was perpetrated by taking the title to Amick's property, for this, according to defendant's evidence, was precisely what had been agreed upon. Necessarily, plaintiff acquired it on his own account or in pursuance of the oral understanding that this was for the benefit of his father and defendant McKnight, and his refusal to turn it over to them, or rather that remaining after payment of the purchase price, was but a breach of the said oral contract.

But, as said, such contract was that he take title for their benefit, in trust for them, and, under section 4625, oral evidence of an agreement for the creation of or transfer of any interest in the real estate was not ˙competent. *Brown v. Barngrover,* 82 Iowa, 204; *Andrew v. Concannon,* 76 Iowa, 253; *Burden v. Sheridan,* 36 Iowa, 125. See, *contra, Johnson v. Hayward,* 74 Neb. 157 (103 N. W. 1058, 107 N. W. 384, 5 L. R. A. (N. S.) 112).

It follows that, as there was no competent evidence that plaintiff held the land in trust, the decree must be, and is, *affirmed.*