SHEFFIELD MILLING COMPANY, Appellant, v. J. G. HEITZMAN et al., Appellees.

**HOMESTEAD: Wife's Homestead Not Liable for Husband's Debts.**
1 Evidence held to show that the purchase price of a homestead was furnished solely by a wife, and that she was the sole owner thereof, with consequent result that the same was not liable for the debts of the husband.

**TRUSTS: Executed Trusts—Parol Evidence.** The objection that parol
2 evidence is inadmissible to establish an express trust becomes quite immaterial when the trust has been fully executed.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

OCTOBER 18, 1921.

REHEARING DENIED JANUARY 20, 1922.

SUIT in equity, to subject certain property occupied as a homestead by J. G. Heitzman and Mabel Heitzman, husband and wife, to the satisfaction of two judgments against J. G. Heitzman. Relief was denied plaintiff, and it appeals. Facts appear in the opinion.—*Affirmed.*

*John L. Benbow,* for appellant.

*Herminghausen & Herminghausen,* for appellees.

ARTHUR, J.—On the 17th day of February, 1903, appellant recovered judgment in the district court of Lee County against appellee J. G. Heitzman, for $210.21 and costs of suit. On the 9th day of January, 1906, appellant recovered another judgment against J. G. Heitzman, appellee, in the sum of $388.19 and costs. At the time these judgments were entered, J. G. Heitzman was a single man, and remained single until 1908, when he married Mabel Heitzman, appellee; and they now have four children, ranging in age from two and one-half years to eleven years. J. G. Heitzman was formerly a real estate agent, and is now a clerk in a store. In the spring of 1916, the Heitzmans were living in a rented house. Mabel Heitzman had some money, and expected soon to inherit some money from her mother, who was suffering from cancer and could live but a short time, and who did pass away in a few months. Her mother carried a policy of life insurance, and owned two houses in Fort Madison. She also expected some money from her grandmother, which she received. On the death of her mother, she did receive $500 of the life insurance. She received $180 and $650 from the sale of some property of her mother's estate, and she also received rental from property of which her mother died seized, of from $12 to $15 a month, and she continues to receive it. She also received $100 from her grandmother. She also received $25 per month for rental of the homestead property for some three months after it was purchased, and before they took possession.

J. G. Heitzman had no money,—was insolvent. Upon the expectation of Mabel Heitzman to receive money from her mother's estate and from her grandmother, which she did afterwards receive, negotiations were begun with H. J. Kennedy, appellee, for the purchase of the property to be occupied by them as a homestead, which they did purchase for $2,500. A contract of purchase of the property was made and signed, from Kennedy to J. G. Heitzman, or Jerome Heitzman, the same person. The contract was prepared by Kennedy's lawyer. It was signed by both Jerome and Mabel Heitzman, at a bank where Kennedy was cashier. When they were returning home from signing the contract, Mabel said to Jerome, ''Why is that contract not made in my name?'' Jerome said, ''It is only a contract, and as soon

<div style="margin-left: 2em">
1. HOMESTEAD: wife's homestead not liable for husband's debts.
</div>

as we get a deed to it, it will be made out correctly in your name.'' Afterwards, she spoke to him in the same way, and Jerome made the same answer. The contract of purchase was made on the 20th day of May, 1916, and a down payment was made of $500. The balance was to be paid in installments of $20 on the 20th day of each month, and thereafter until fully paid, commencing on June 20, 1916; and a promissory note was given by J. G. Heitzman and Mabel Heitzman for the balance of the purchase price. All installments due were paid, up to the time of this trial. On March 19, 1918, "for value received," J. G. Heitzman assigned the contract to Mabel Heitzman, in writing, and at the same time she assumed, in writing, all obligations of J. G. Heitzman under and by virtue of the contract; and on the same day, J. G. Heitzman, in consideration of "one dollar, love, and affection and other good and valuable considerations," executed and delivered to Mabel Heitzman a quitclaim deed to the premises.

This action was begun May 29, 1918, about two months after the assignment of the contract and the quitclaim deed were made by J. G. Heitzman to Mabel Heitzman. In the original petition, appellant alleged that appellee J. G. Heitzman had purchased from H. J. Kennedy, who held the legal title, the premises in controversy, and was the owner of an equity and interest in the property; that Kennedy held the property, subject to the payment by J. G. Heitzman of the remainder of the purchase price; that the interest of J. G. Heitzman in and to the property had been acquired subsequent to the recovery of the judgments of the plaintiff; and that the equity and interest in the realty of J. G. Heitzman was liable, in equity, for the payment and satisfaction of the judgments. Appellant prayed for judgment and decree establishing the judgments as liens against the interest of J. G. Heitzman in and to the property; that the balance due Kennedy, holder of the legal title, be ascertained; and that the property be sold, and out of the proceeds of the sale the balance of the purchase price due Kennedy be first paid; and that the remainder of the proceeds be applied in satisfaction of plaintiff's judgments.

In an amended petition, plaintiff alleged, on information, not having access to the contract, that the contract provided that

the title to the premises would be held by Kennedy until the whole or a large part of the consideration was paid, and that then the title was to be conveyed by Kennedy to Mabel Heitzman; that appellee J. G. Heitzman had, in fact, paid a large part of the purchase price; and that J. G. Heitzman had made the contract and the payments thereon in part performance for the purpose of hindering, delaying, and preventing the satisfaction of plaintiff's judgments out of the realty; and that J. G. Heitzman was insolvent.

Appellees answered separately, but their answers were substantially alike. They admitted rendition of the judgments, but denied that J. G. Heitzman, appellee, was the owner of an equitable or any other interest in the property in controversy; denied that he ever had any interest in the property, equitable or otherwise. Appellees averred that, about May 20, 1916, J. G. Heitzman negotiated for and on behalf of Mabel Heitzman, his wife, to purchase the real estate in controversy as a homestead for said Mabel Heitzman and himself and their family; that a contract was made and entered into on May 20, 1916, between Kennedy, appellee, and Mabel Heitzman, appellee; that, by inadvertence or mistake, the contract was written in form only as though J. G. Heitzman, appellee, was the party in interest; but that, in fact and in deed, the said Mabel Heitzman was to furnish the consideration for the purchase of said real estate, and did furnish the consideration thus far paid towards the purchase of said real estate; and that Mabel Heitzman was, at the time, the real purchaser; that J. G. Heitzman, in effect, had and has no interest in the property other than as the husband of Mabel Heitzman; that, in pursuance of the purchase of the property as a homestead, J. G. Heitzman and Mabel Heitzman, with their family, constituted of four children, ranging from two and one-half to eleven years of age, began to occupy the premises as a homestead in October, 1916, and have ever since so occupied it; that, under the law, the property was exempt from execution; that Mabel Heitzman had paid from her personal resources all the money which had been paid on the contract; that, on March 19, 1918, J. G. Heitzman, appellee, assigned, conveyed, and transferred to Mabel Heitzman, appellee, his apparent right, title, and interest in the contract, and made

a quitclaim deed, on the same day, to her of all his apparent interest in and to the property; and that Mabel Heitzman, appellee, accepted said transfer, and assumed all the obligations of the contract, and the same was indorsed on the contract; that the assignment of the contract and the execution and delivery of the deed were one, and in consummation of one transaction; that part of the consideration from Mabel Heitzman to J. G. Heitzman for the execution of the deed was the assuming and agreeing to pay a debt due to J. B. Heitzman, father of J. G. Heitzman, appellee, in the amount of $900, incurred and used in the expense of remodeling and repairing the homestead; that Mabel Heitzman, appellee, was a bona-fide holder for value of her interest in the property; that the transfer of the contract and of the rights thereunder, and the execution and delivery of the deed, were made long prior to the commencement of the instant action.

Copies of the contract, with indorsement of payments thereon, and of the quitclaim deed, were annexed to the answers.

Appellees further allege that the judgments against J. G. Heitzman, appellee, had been recovered more than ten years prior to May 16, 1916, the date of the contract; and that the judgments were not and never had been liens on the real estate in controversy; and that the property was not subject to the satisfaction of the judgments.

After appellees' answers were filed, plaintiff amended its petition, alleging that the assignment of the contract and the execution of the deed from J. G. Heitzman to Mabel Heitzman, appellee, were for the purpose of hindering, delaying, and defrauding the creditors of appellee J. G. Heitzman, and to prevent the subjection of the realty in controversy to the satisfaction of the judgments due the plaintiff, and that appellee J. G. Heitzman was insolvent at the time of the execution and delivery of the contract and deed, and that they were executed without sufficient consideration, and were of no effect in equity; and prayed that the assignment of the contract and the deed be set aside.

In reply to the separate answers of appellees, plaintiff averred that appellees J. G. Heitzman and Mabel Heitzman were estopped by the terms of the contract from claiming and as-

serting any rights, title, or interest under the quitclaim deed made by J. G. Heitzman, appellee, to his wife, Mabel Heitzman, appellee, because such deed was voluntarily executed, without a good, valuable, and sufficient consideration, and was fraudulent as to appellant, a judgment creditor of J. G. Heitzman, appellee, who was insolvent; and that no change of possession or indication of change of title was made of record, and that no other notice was given, actual or constructive, by recording of the deed before the commencement of this action and the incurring of the expenses of this litigation, prior to the filing of the separate answers of appellees; that all of the appellees were estopped, as against the appellant in this action, who relied on the original contract and a part performance thereof by J. G. Heitzman, appellee; that appellee Kennedy's rights, by reason of his making common cause in the fraudulent transfer, were postponed and rendered inferior in equity to the paramount lien and rights of plaintiff, sought to be enforced in this action.

There was no dispute in the evidence. The only testimony offered by appellant was formal entries of the judgments which had been admitted by defendant, and the original contract, with payments indorsed thereon, which was furnished by defendant. Appellant offered no oral testimony. The only witnesses were the appellees.

If Mabel Heitzman, appellee, wife of J. G. Heitzman, appellee, in fact furnished from her own resources all of the money paid on the contract,—all of the purchase money which had been paid for the property in controversy,—that would seem to be determinative of this case, in favor of appellees and against appellant. The evidence, without dispute, shows that she did furnish the money to pay every cent that was paid on the purchase price of the property. True, J. G. Heitzman, appellee, paid the installments, most of them, on the contract to Kennedy, but it is not shown that he used one cent of his own money in making such payments. But on the contrary, it is clearly and conclusively proven that all of the payments were made with the individual money of Mabel Heitzman. J. G. Heitzman was insolvent, was a clerk in a store, and it is not shown that he ever had any money of his own with which to make payments. It does appear without contradiction that Mabel Heitzman re-

ceived money from her mother's life insurance and from her mother's estate, and also from her grandmother, and that such moneys were used in making payments on the contract. The down payment was made from a loan of $500, which was taken up with the insurance money received by Mabel. They borrowed $900 from J. B. Heitzman, father of J. G. Heitzman, appellee, part of which was paid by Mabel Heitzman, and the balance assumed by her, which was not paid at the time of the trial. She was on the note given to the father for the loan.

Appellant claims that fraud was intended and committed by transferring the contract and executing the quitclaim deed. Appellant asserts that J. G. Heitzman transferred the property to Mabel Heitzman for the purpose of defrauding his creditors. The evidence does not prove these claims, but positively disproves them. It is not shown that any money of J. G. Heitzman's went into the purchase of the premises, but it conclusively appears from the evidence that Mabel Heitzman furnished from her own individual means all the money which was paid on the property. J. G. Heitzman did not pay anything towards the purchase price nor towards the improvements on the homestead. There could be no fraud on the part of Mabel Heitzman, for she did not know of the existence of plaintiff's judgments until the commencement of this action. All of the appellees, who were all the persons having personal knowledge of the transaction, say that the property was purchased by Mabel Heitzman, but, by inadvertence or mistake, the contract of purchase ran to J. G. Heitzman.

Appellant contends that the evidence offered to prove that Mabel Heitzman was the purchaser and the real party in interest was incompetent, being an attempt to vary by parol evidence the terms of the written contract; that appel-

2. TRUSTS: exe- cuted trusts: parol evidence.

lees, by so doing, attempted to set up an express agreement to establish a trust; and that an express trust cannot be established by parol; and that there can be no resulting trust, for the reason that appellees relied on an express agreement. Unquestionably, J. G. Heitzman, appellee, while he held the contract, held in trust for Mabel Heitzman, who had furnished all the money paid on the contract,—which would constitute a resulting trust. Whether it be considered

that J. G. Heitzman was acting as the agent of Mabel Heitzman, or was her trustee, and she the *cestui que trust*, it matters little. Long before this action was commenced, J. G. Heitzman and Mabel Heitzman, and also Kennedy, recognized that the apparent interest of J. G. Heitzman in the contract in fact belonged to Mabel Heitzman, and that J. G. Heitzman had no interest in the property, except as husband. If it was a resulting trust, as we think it was, it was discharged by J. G. Heitzman's assigning the contract and quitclaiming to Mabel. After a trust has become fully discharged, it ceases to be vulnerable to the objection that it may not be established, in the first instance, by parol testimony. A trust required by statute to be in writing is not void, but merely unenforcible, when resting in parol, and the conveyance by the trustee in discharge of the trust is based on sufficient consideration as against strangers. *McCormick Harv. Mch. Co. v. Griffin*, 116 Iowa 397.

The record shows that the transaction was free from fraud, and, although not done in as strictly a businesslike manner as is usual with strangers, was carried out more strictly than is usual between husband and wife. The court was correct in finding the equities with appellees and in dismissing the petition.

Decree and judgment must be and are affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.