EDWARD DURBAND, Appellant, v. WILLIAM NICHOLSON, Appellee.

NOVEMBER 22, 1927.

SUPPLEMENTAL OPINION MAY 11, 1928.

*Kass, Zink & Kass*, for appellant.

*Roseberry & Roseberry*, for appellee.

KINDIG, J.—For a lucid understanding of the alleged errors in this proceeding, it is necessary to consider the propositions separately; and to effect the greatest clearness, the facts surrounding each will be set forth when the particular phase is discussed.

I. The affirmative relief sought by plaintiff-appellant will be first reviewed.

This suit was brought to obtain judgment on a written contract, dated March 27, 1924, which provided that, if all the obligations of the parties and their respective wives to the Northern Trust Company, Chicago, Illinois, were fully settled, then the appellee should purchase a certain note executed by L. E. Becker March 1, 1921, payable to appellant, in the sum of

$4,070, when real estate therein described was sold. Said adjustment with the Chicago concern, under a written power of attorney, was negotiated by appellee and one W. G. Bolser. At this time, there was actually due the Illinois company from $30,000 to $40,000, and the maximum amount to be paid in said contemplated compromise was $20,000. Appellant owed seven twelfths, and appellee five twelfths thereof. That ratio was was recognized in said basic agreement of March 27, 1924.

Lack of consideration is the defense. Two angles appear: First, that, in the Trust Company transaction, the absolute, fixed, and past-due debt was much more than $20,000. Therefore, the instrument enabling the suggested accord and satisfaction required only a part assumption of this previous established liability to pay; and second, said nonnegotiable note was given as part of the sale price in a land transaction wherein appellant sold to the said L. E. Becker certain real property named therein, which had been before purchased by said Edward Durband from one Martin W. Orton. And without the knowledge or consent of Mr. Becker, appellant reconveyed said farm to Orton, in cancellation of their contract, thus placing beyond the range of possibility fulfillment of said undertaking with Becker, and resulting in absolute uncollectibility of said promise to pay the $4,070; because, in this predicament, said premises therein described could not be sold, as contemplated, and the maturity date would never arrive. In reply, appellant asserts that there was ''consideration'' for appellee's agreement to assume said Becker paper, because, under the covenant of March 27, 1924, he was given discretion in making final disposition of said Chicago Trust Company account, and that the jury should have been instructed accordingly.

We are constrained to hold that the ruling below was proper, under the circumstances. Certainly, there was no ''consideration'' furnished by appellant's consent to bear his portion of the burden carried by these parties for the institution at Chicago. Prior contractual duty demanded as much. No new detriment was suffered, or benefit extended. Nothing, based upon itself, cannot produce something. 13 Corpus Juris 356, Section 216; *Ayres v. C., R. I. & P. R. Co.*, 52 Iowa 478; 6 Ruling Case Law 676, Section 83; and 6 Ruling Case Law 918; *Anderson v.*

*Lundt,* 200 Iowa 1265. · Language used in said last .cited case is to this effect: ·

"A promise to pay what he [one] was· already obligated ·to .pay would not, in itself, have the support of a consideration."

Free ·decision .in the matter was restricted to the payment of not to exceed $20,000. Parenthetically, it is noted that the amount required to dispose of the Chicago creditor was only $10,000, plus revenue stamps. To repeat the thought in another way, the leeway given appellee was to obtain full and complete release, not by a new "detriment" or "benefit," but by making part performance of the · old compact. Such ·was to· be done with the same. quality, ·but less quantity, .of· the original "consideration." ·

II. Manifestly, there was no foundation for appellant's present procedure, unless the Chicago deal constituted it, and. on· this point we have just concluded otherwise; so,. then, it is  necessary to look to. said nonnegotiable document itself for support; but it lends none. Reason for the execution and delivery of that evidence of indebtedness was the. completion. of appellant's stipulation to make said conveyance to said Becker. Through breach of duty, this.was rendered impossible, as above related, thereby releasing the maker. Moreover, that· very act of alienation forever ended the value of said "note," due to the resulting prevention of maturity. All this was fraudulently concealed from appellee at the time in question,. according to his evidence. "Consideration" nowhere can be found.

Proper instructions submitted this theory to the jury. ·Their verdict in this respect is final.

III. Attention now is directed to the "counterclaim." Redress is here sought on a "contract" made. by appellant and others for appellee's benefit. Upon this doctrine, such remedy may be enjoyed, provided the circumstances so warrant. *Beeson v. Green*, 103 Iowa 406; *McHose v. Dutton*, 55 Iowa 728; *Johnson v. Knapp*, 36 Iowa 616; *In re Estate of Youngerman,* .136 Iowa 488. Contained in.*In re Estate of Youngerman,* supra, is this statement:

· "Counsel for appellee question the right of· appellant to maintain an action for the breach of the contract, which,. as before indicated, was made between testatrix and ·appellant's

father; but the contract was expressly made for appellant's benefit, not for the benefit of the father. The father could not have maintained any action thereon, and clearly appellant is the party entitled to sue. In Code Section 3459 [1897], it is provided that 'every action must be prosecuted in the name of the real party in interest,' and this court has uniformly held that one for whose benefit a contract is made is the real party in interest as to an action for a breach thereof, regardless of whether the consideration proceeds from him or another.''

Cognizance of such beneficence is not essential, nor is it necessary that the beneficiary be an active contractor. *Weiser v. Ross*, 150 Iowa 353; *Hawley v. Exchange State Bank of Stuart*, 97 Iowa 187. See, also, *Meyer v. Stortenbecker*, 184 Iowa 441; *Globe Nat. Fire Ins. Co. v. American Bonding & Cas. Co.*, 198 Iowa 1072.

Here the historical facts are: April 28, 1919, appellee and wife agreed to sell appellant, M. A. Cass, and Frank Dubes, a 900-acre ranch in Plymouth County, of which Cass and Dubes each were to have one fourth, and appellant one half. To meet the convenience of the vendees, said written understanding was executed by the vendors, with said Cass, as trustee, appearing as the second party named therein. A $15,000 down payment was made, one half thereof furnished by appellant, and the other half by Dubes and Cass. Thereafter, May 1st of the same year, appellant telephoned to Cass, and arranged for a meeting in Struble. Pursuant to said arrangements, the three purchasers met. Immediately, appellant stated that appellee and his family wished to have the acreage back, and had deputized him (appellant) to settle with Cass and Dubes. Oral agreement was then made among the three, for the ''benefit'' of appellee, that said enterprise should discontinue, the legal rights acquired be abolished, and proper relinquishment effected, provided that appellee repay said ''earnest money,'' plus $5,000, to said Cass and Dubes. As hereinafter shown, said money was paid. Transfer by the latter was made to appellant for accommodation, and, as he represented, to avoid income taxes. When armed with these equities, appellant appeared before appellee, stating that he (appellant) had invested in the former shares of Cass and Dubes, and was then in a position to resell to appellee. Being entirely ignorant of the true situation, and not knowing that

said "contract" was made for his "benefit," appellee was induced by appellant's false representations and pretenses to, and did because thereof, rebuy said equity in the whole tract for the enormous sum of $50,000. Dividing said amount into its component parts, it is learned that $15,000 was the original earnest money, $5,000 the interests of Cass and Dubes, and $30,000 pure profit to appellant. During all the years, these parties had been neighbors, friends, and partners; confidential relationships had always existed; and wrongdoing was never suspected. Without knowledge of the true facts, the amount was finally paid. Afterwards learning the actuality, the "counterclaim" was interposed. Denial of the original contract for appellee's "benefit" is made in appellant's reply, and when the testimony to establish it was offered, avoidance was attempted by basing objection upon the statute of frauds. Affirmance is asked by appellee on the theory that Cass and Dubes had performed their part of the "oral contract," and therefore the protest was overcome. Concession is made that Cass and Dubes completely fulfilled their bargain.

Code of 1924 provides:

"Section 11285. Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent: * * * 3. Those for the creation or transfer of any interest in lands, except leases for a term not exceeding one year. * * * "

"Section 11286. The provisions of Paragraph 3 of the preceding section do not apply where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held possession of the premises under and by virtue of the contract, or when there is any other circumstance which, by the law heretofore in force, would have taken the case out of the statute of frauds."

Partial or total performance of an "oral contract" takes it out of "the statute of frauds." *Yule v. Fell*, 123 Iowa 662; *Sweeney v. O'Hora*, 43 Iowa 34; *Partello v. White*, 197 Iowa 24; *Tamingo v. Freiberg*, 188 Iowa 788.

Hence, in the case at bar, authority for the admission of

1270

said proof is found in the legislative enactments above quoted, as interpreted by the courts in the authorities just cited. True, the fountain from which appellee's fundamental rights flowed had its source in the parol arrangement. Yet Dubes and Cass had done everything required of them; thus, so far as they are concerned, the "contract" was fully executed, and the exception to general statute of frauds made legal the otherwise objectionable verified statements. With his rights established thereby, appellee had a ground for this proceeding, because his said "beneficial interest" was denied him through the fraud and false pretenses of appellant; and the jury was admonished and charged in harmony with this thought.

Other errors are assigned; but, after careful consideration, we find they are without merit, and, to accomplish brevity, further reference is not made.

Judgment of the district court is affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.

MORLING, J., takes no part.

### SUPPLEMENTAL OPINION.

PER CURIAM.—In the original opinion, the discussion relating to the statute of frauds dealt with Sections 11285 and 11286 of the 1924 Code. On rehearing, appellant contends that the case is controlled by certain authorities cited by him. Those pronouncements, generally speaking, grow out of the predecessors of Section 10049 in the same Code. The latter reads as follows:

"Declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law."

That part of the legislative enactment referring to the express trust is now relied upon by appellant. This, however, does not apply to the facts revealed in the case at bar; but, on the other hand, the present controversy (if the "provision"

has any application at all) is controlled by the remaining portion of the section, to wit:

"But this provision does not apply to trusts resulting from the operation or construction of law."

Appellee's case was founded and built upon the frauds of appellant, and appellant obtained the property from Cass and Dubes by "fraud," under the pretext that the same would be given to appellee without further expense to him. More than this, Cass and Dubes furnished the consideration in the first instance, and in the second place, appellee paid the entire cost. Therefore, the "trust," if any, was not "express," but "resulting or constructive." *Culp v. Price*, 107 Iowa 133; *Havner Land Co. v. MacGregor*, 169 Iowa 5; *Wahl v. Taylor*, 176 Iowa 353; *State Exchange Bank v. Nolan*, 201 Iowa 722; *Bogle v. Goldsworthy*, 202 Iowa 764. Also, see *Ratigan v. Ratigan*, 181 Iowa 860; *Sheffield Milling Co. v. Heitzman*, 192 Iowa 1288. Consequently, the parol evidence in controversy was admissible, under the circumstances of this case. Even the cases cited by appellant concede the legal principles here involved. *Flanders v. Booge*, 146 Iowa 675; *Newis v. Topfer*, 121 Iowa 433; and kindred authorities. No objection was made as to the form or nature of the action adopted to obtain the relief.

Accordingly, the appellant's petition for rehearing is overruled.