SELBY, Respondent v. VICTORIA MINES, INC., Appellant

No. 8948

Submitted April 14, 1950. Decided August 7, 1950.

221 Pac. (2d) 423

Mr. Alf C. Kremer, Mr. Rex F. Henningsen, Butte, for appellant. Mr. Kremer and Mr. Henningsen argued orally.

Mr. Joseph J. McCaffery, Jr., Mr. Thomas F. Kiely, Mr. William B. Frame, all of Butte, for respondent. Mr. McCaffery and Mr. Kiely argued orally.

THE HON. DAVID N. NYQUIST, sitting in place of MR. JUSTICE FREEBOURN, disqualified:

This is an action by the plaintiff against the defendant for damages to plaintiff's automobile, caused by the alleged negligent operation of defendant's truck operated in its business by an employee. The appeal is by defendant from a judgment for plaintiff on a jury's verdict.

The facts as shown by the evidence may be briefly summarized as follows:

On December 9, 1945, at or about the hour of two o'clock a. m., one Robert James was driving plaintiff's 1938 Plymouth automobile sedan on a public highway between the cities of Silver Star, Montana, and Twin Bridges, Montana, when defendant's automobile truck driven in the opposite direction by its employee collided with plaintiff's car.

It is admitted that at the time of the accident the truck was being operated by defendant's employee then acting within the scope of his employment.

Plaintiff's automobile was being operated by one Robert James, with the permission of plaintiff's wife. At the time of the accident, plaintiff was at Pocatello, Idaho, where he was employed.

Plaintiff testified that he wrote a letter to the defendant on January 5, 1946, and received an answer, same being introduced in evidence over defendant's objection. Defendant's letter referred the plaintiff to one Mr. Hugo Dobler, Helena, Montana, as the adjuster for the company carrying defendant's liability insurance. Plaintiff did not employ counsel until the first part of February, 1946, at which time he brought defend-

ant's letter to Attorney William B. Frame, of Butte, and asked the latter to represent him in the matter.

Mr. Frame testified that he went to see the adjuster, Mr. Dobler, at the latter's office in Helena and that Mr. Dobler admitted that he knew about defendant's letter, and that he was representing the defendant Victoria Mines. Mr. Frame further testified that at this conference he intimated that he might have to bring two lawsuits in connection with said accident and that Dobler stated "there should be no hurry about suing for a few days and that the investigation wasn't complete, but it would be in the not too distant future and we might arrive at an equitable settlement."

Mr. Frame had several other meetings with Mr. Dobler, but testified that nothing definite came out of them until June 3, 1946, when Mr. Dobler, Mr. Frame and the plaintiff met in Mr. Dobler's office, at which time an agreement was arrived at, without any condition imposed, wherein the sum of $1,280 was to be paid for damages to the automobile, and the further sum of $300 for a release from the plaintiff for any possible injuries to plaintiff's minor daughter.

Plaintiff and Mr. Frame asserted that Mr. Dobler told them that he would send a check or draft for such sum in a few days, but that nothing had ever been received. The sum of $1,580 was the amount originally sued for in plaintiff's complaint. At the trial, upon plaintiff's motion, the item of $300 was eliminated in order to conform to the proof received, since no indemnifying agreement had ever been secured.

The action is based upon the promises made by Mr. Dobler, the adjuster for the insurance company, the plaintiff alleging that the defendant was bound by such promises and the defendant denying that Mr. Dobler represented the defendant corporation, and alleging that Mr. Dobler's promises, if any, were made on behalf of the Standard Accident Insurance Company, and not on behalf of the defendant corporation.

Defendant assigns as error the overruling of its objections

to the introduction of any evidence; the giving of certain instructions; the refusal to give certain offered instructions; the denial of defendant's motion for non-suit and directed verdict, and the overruling of defendant's demurrer to the complaint.

While there are other assignments of error, the main question hinges upon whether or not Mr. Hugo Dobler had authority to make the compromise agreement for the settlement of the plaintiff's disputed claim alleged to have been made in the adjuster's office on June 3, 1946, when Mr. Dobler, Mr. Frame and the plaintiff were there present. According to this agreement, and the claims of plaintiff, the defendant, acting through Mr. Dobler, agreed to pay the sum of $1,580 in full settlement of all claims on the part of plaintiff, for the damages to the car, and whatever injuries might have been sustained by his minor daughter.

The contract of insurance admitted in evidence over defendant's objection, contains the following provisions, among other, to-wit: "* * * the Company shall (a) defend in his name and behalf, any suit against the insured, alleging such injury or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; * * *."

In this provision of the contract of insurance, defendant expressly confers upon the insurance company the right to make such negotiation and settlement of any claim or suit as it shall deem expedient. Having so authorized its making, defendant is bound by whatever settlement the insurance company or its agent or adjuster made or negotiated within the limits of the policy of insurance. This applies as well to the insured as to any party injured who is in a class covered by the policy of insurance and for whose benefit the same is written.

Defendant contends that the above provision is part of a contract to which plaintiff was not a party and hence insufficient to create an agency by implication. However in Devlin

v. New York Mut. Cas. Taxicab Ins. Co., 123 Misc. 748, 206. N. Y. S. 365 at 367, the court said:

"After all, the real parties in interest, at the time of the issuance of the insurance policy, were the public, of which the plaintiff was one, and the defendant insurance association. It is well established that two parties may make a contract voluntarily for the benefit of one another, which may be enforced by the latter."

In Durband v. Nicholson, 205 Iowa 1264, 216 N. W. 278, 279, 219 N. W. 318, the court recognized that a third party has the right to redress on a contract which was made between others for his benefit, saying further:

"Cognizance of such beneficence is not essential, nor is it necessary that the beneficiary be an active contractor."

In Finkelberg v. Continental Cas. Co., 126 Wash. 543, 219 Pac. 12, at 14, it is said: "A third person, beneficially interested in a contract, may maintain an action to recover thereon, even though the identity of the third person may not be known at the time of the execution of the contract."

As was said in Malmgren v. Southwestern Automobile Ins. Co., 201 Cal. 29, 255 Pac. 512, at 513, "The contractual relation which the law created between the insurer and third parties is unquestionably apparent from an inspection of the complaint."

In Slavens v. Standard Acc. Ins. Co. of Detroit, 9 Cir., 27 F. (2d) 859, 861, the court said:

"We think that the plaintiff herein is a beneficiary of the insurance policy and a real party in interest, and that his compliance with the condition of the policy as to prompt notice and information was sufficient to authorize him to bring the present action, and that he could not be deprived of his rights under the policy by Weinsheimer's neglect or failure to act. The policy recognizes the plaintiff's right to sue upon the policy in providing that 'the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injuries sustained or loss occasioned during the policy

period. In the event of the assured being unable to satisfy judgment against him, the injured person, or his heirs or personal representatives, in case of death resulting from an accident, shall have the right of action against the company, subject to the terms and limitations of this policy, to recover the amount of said judgment.' Ordinarily the beneficiaries of an indemnity contract may maintain an action on the contract, though not named therein, when it appears by fair and reasonable intendment that their rights and interests were in the contemplation of the parties, and were being provided for at the time of making the contract. Dixon v. Horne, 180 N. C. 585, 105 S. E. 270; Gorrell v. Greensboro Water Supply Co., 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598; Capelle v. U. S. Fidelity & Guaranty Co., 80 N. H. 481, 120 A. 556.''

In its letter of January 8, 1946, to the plaintiff, in answer to his letter of January 5, 1946, the defendant states that the matter of the collision between one of its trucks and the plaintiff's Plymouth automobile had been referred to the adjuster for *"our"* insurance company, Mr. Hugo Dobler. Certainly, the plaintiff had a right to rely upon this representation by the defendant, and likewise the defendant is bound thereby. In all of the dealings and actions on the part of Mr. Dobler, there is nothing to indicate anything but the fact that he was acting on the part of the insurance company and the defendant, and that the matter of the collision and possible settlement for damages sustained by plaintiff had been turned over to him by the insurance company and the defendant.

In a letter written by Mr. Dobler to the plaintiff, on January 12, 1946, he writes in part as follows: ''Mr. W. R. Callaway of Sheridan, Montana, has forwarded your letter of January 5th to *us* * * *'' (Emphasis supplied.)

In a letter written by Mr. Dobler to Attorney William B. Frame, on July 1, 1946, he writes in part as follows, to-wit: ''I have before me your letter of June 28 in further reference to

the claim of Mr. Arthur Selby, and note that he is adding up the storage which we of course don't feel we are responsible for in any way.

"The facts in this case are that up until recently I was of the opinion that you represented some of the possible claimants as far as personal injury is concerned. And it was only recently you told me you did not have any interest in the personal injury claims, and that your interest was limited to that of Arthur Selby, covering the damage to the car. * * *

*"I do not feel that I can take any responsibility as far as the damage to Mr. Selby's car is concerned until the question of personal injury claims have been determined.* I think you will undoubtedly understand my reasoning along this line * * *

*"As soon as I am in position to do something with the matter* I will promptly contact you * * *"* (Emphasis supplied.)

R. C. M. 1947, sec. 2-101 defines "agency" as follows: "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency."

In the case of Birmingham News Co. v. Birmingham Printing Co., 213 Ala. 256, 104 So. 506, 508, the court states as follows:

"As between a principal and third persons an agency in fact may exist without the direct assent of the agent. Thus, if one takes up a matter of business with another, and is referred to a third person as agent having the business in hand, and directed to take up the matter with him, the third person becomes the agent. Conferring authority to deal with another as agent necessarily carries the power of the agent to act as such. The only proof of acceptance required in such case is that the agent acted within the authority so vested."

In Douglas v. United States Fidelity & Guarantee Co., 81 N. H. 371, 127 A. 708, 711, 37 A. L. R. 1477, a case in which the insured sued the insurer for negligent failure to settle an action against him within the policy limits, the contract of insurance had a reservation of rights clause similar to the instant case.

The defendant insurance company denied the existence of the relationship of principal and agent between it and its insured. Upon such a factual situation, the court held:

"Denial of agency upon the part of the insurer is put upon the ground that, if there were such a relation the insurer would be bound to consider the interests of the insured, when in conflict with its own. It is then said that, when there is such conflict, the insurer may consult its own interests solely. Therefore, it is concluded, there can be no agency.

"This reasoning seems to imply that one party cannot be the agent of the other party. But the law is plainly otherwise. The parties may make that sort of an agreement if they see fit. The result of such a compact is not to leave the promisor free to act as though he had made no promise. On the contrary his conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest * * * Where one acts as agent under such circumstances, he is bound to give the rights of his principal at least as great consideration as he does his own * * *

"The fact that there will be, or may be, conflicting interests is evidence to be considered upon the question of intent to create an agency; but it is of little weight in view of the explicit terms of the present contract. The whole control of negotiations is taken from the insured, and given to the insurer, who, under the caption of 'Service,' agrees to investigate all accidents and settle any resulting claims 'in accordance with the law'."

In the case of Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N. W. 257, 259, 235 N. W. 413 the factual situation is similar to that of the Douglas Case, supra, and in holding for the insured and against the insurance company, the court held:

"For a consideration fixed by it, the defendant company contracted to indemnify the plaintiff against the very claims that were the basis of the judgments totaling $10,500. As a condition of affording plaintiff that protection, the company

assumed absolute control of the adjustment of all claims and all litigation arising out of such claims.

"Under such a contract there is no escape from the conclusion that the insurance company became the agent of the insured for the purpose of handling such claims and of conducting such litigation. The determination in Wisconsin Zinc Co. v. Fidelity & Deposit Co., 162 Wis. 39, 52, 155 N. W. 1081, Ann. Cas. 1918C, 399, that the insurance carrier 'could not be the agent of the insured under such a policy of insurance' must be overruled."

In the case of G. A. Stowers Furniture Co. v. American Indemnity Co., Tex. Com. App., 15 S. W. (2d) 544, 547, the factual situation is similar to that of the above cases, and in holding for the plaintiff, the court said:

"* * * the indemnity company had the right to take complete and exclusive control of the suit against the assured, and the assured was absolutely prohibited from making any settlement, except at his own expense, or to interfere in any negotiations for settlement or legal proceeding without the consent of the company; the company reserved the right to settle any such claim or suit brought against the assured. Certainly, where an insurance company makes such a contract, it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages."

The case of Hayes v. Gessner, 315 Mass. 366, 52 N. E. (2d) 968, more closely fits the facts of the case here on appeal. In such case the adjuster for the insurance company so handled

the defense and settlement of plaintiff's claim against the insurance company that the Statute of Limitations had run against plaintiff's cause of action before suit was instituted. The plaintiff relied on the adjuster's representation that he could settle the claim for $1,500 at a time beyond the statutory period or bring suit. The court in holding for the plaintiff, said, concerning adjuster Murdock's conduct:

"Murdock's conduct is binding upon the defendant. By the terms of the policy the defendant had conferred 'the sole right of settlement and defense' upon his insurance company. By so doing he not only authorized the company to conclude a settlement by which he would be bound but he also necessarily authorized the company to conduct the negotiations required to make such a settlement. Just as the defendant would have been bound by the effect of these negotiations if they had resulted in a settlement, so also is he bound when they result in an estoppel. He cannot turn over to an insurer the whole management of the subject of settlements in his behalf and accept the benefit of the insurer's efforts when they are successful and relieve him from liability but repudiate their consequences when they affect his defense adversely. It is no answer to say the company acts in its own behalf, and that the defendant cannot control its conduct. It does act in its own behalf, but it also acts in behalf of the defendant to the extent of his interest in the defense, although by the terms of the contract the company may exercise its own judgment to its own advantage uncontrolled by the defendant."

We find no merit in any of the specifications of error. The ▉ complaint states a cause of action. There was a forbearance to sue on the part of plaintiff. While there is conflict in the evidence, the jury resolved such conflicts and found in favor of the plaintiff upon substantial evidence ample to sustain such finding.

The negotiations with the adjuster were within the time permitted by law. It would be manifestly unjust to suffer this plaintiff to timely negotiate with and rely upon the promises

of one who not only purports to have the authority to make a settlement, but who actually has such authority expressly conferred and now to hold that the plaintiff would find himself without any recourse to redress a wrong which the jury found to have been inflicted upon him by the defendant. It is the purpose of courts to see that justice, under the law, is done between the parties litigant.

It may be argued that the defendant has not had its day in court, since the matter of its negligence has never been passed upon by the jury. However, one has his day in court when he voluntarily agrees to make a settlement without going into court, and the jury believed that such settlement had been agreed to by and between the plaintiff and the defendant, acting through the adjuster for the defendant's insurance company.

Equity, law and justice demand that the judgment of the trial court be affirmed, and that the verdict of the jury be sustained.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN, METCALF and BOTTOMLY concur.